ROB BONTA, State Bar No. 202668
Attorney General of California
ANTHONY R. HAKL, STATE BAR NO. 197335
Supervising Deputy Attorney General
DAVID GREEN, State Bar No. 287176
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-6242
 Fax:  (916) 324-8835
 E-mail:  David.Green@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNE SODERGREN, Executive Officer of the California State Board of Pharmacy, JULIE ANSEL, Deputy Executive Officer of the California State Board of Pharmacy, SEUNG OH, President of the California State Board of Pharmacy, JESSICA CROWLEY, Vice President of the California State Board of Pharmacy, TREVOR CHANDLER, Treasurer of the California State Board of Pharmacy, RENEE ARMENDARIZ, Member of the California State Board of Pharmacy, KARTIKEYA JHA, Board Member of the California State Board of Pharmacy, SATINDER SANDHU, Member of the California State Board of Pharmacy, MARIA D. SERPA, Member of the California State Board of Pharmacy, NICOLE THIBEAU, Member of the California State Board of Pharmacy, JEANETTE DONG, Member of the California State Board of Pharmacy, JEFF HUGHES, Member of the California State Board of Pharmacy, CLAUDIA L. MERCADO, Member of the California State Board of Pharmacy, JASON NEWELL, Member of the California State Board of Pharmacy, and RICARDO SANCHEZ, Member of the California State Board of Pharmacy, all in their official capacities,<br><br>Defendants. | Case No. 2:25-cv-02799-JAM-CSK<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      January 6, 2026<br>Time:     1:00 p.m.<br>Dept.:     6<br>Judge:    The Honorable John A. Mendez |

## I. PCCA's First Amendment Claim Fails as a Matter of Law

### A. The Regulations Require Suppliers of Drug Ingredients to Identify the Ingredient's Manufacturer—Meaning, the Original Manufacturer

Under the regulations challenged here, a "supplier" of a drug ingredient to a compounding pharmacy must identify the ingredient's "manufacturer." Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b). Under the broad definition of "manufacturer" in Cal. Bus. & Prof. Code, § 4033(a), a supplier could itself be labeled a "manufacturer" in some circumstances. A supplier, for example, that purchases an ingredient from a manufacturer, repackages it, and then sells it to a compounding pharmacy, could be considered a "manufacturer," along with the original manufacturer, under Cal. Bus. & Prof. Code, § 4033(a). But under the regulations, the supplier would only be the "supplier," not both the "supplier" and a "manufacturer." Making this plain, the regulations contemplate only a single manufacturer, referring to "*the* manufacturer." Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b) (emphasis added). Defendants have sometimes referred to this manufacturer as the original manufacturer. *See, e.g.*, ECF No. 33-1 at 12 n.1.

In opposing Defendants' motion to dismiss, PCCA focuses on these references to the original manufacturer and claims Defendants are improperly "attempt[ing] to rewrite its own Regulations" by "inserting the term 'original' before manufacturer.'" ECF No. 35 at 7. It adds that the term "manufacturer" has "multiple possible meanings." ECF No. 35 at 10. But while the term "manufacturer" can have a broad reading in some contexts, the regulations remain clear in their limited scope. And PCCA's own conduct shows it understands "manufacturer" to mean the original manufacturer and understands "supplier" to include wholesale suppliers like itself. For instance, in its comments to the California State Board of Pharmacy (the Board) before the Board adopted the regulations, PCCA did not even identify itself as a manufacturer; it instead characterized itself as a "supplier" and treated "manufacturers" as distinct. ECF No. 1-4 at 2. And in its complaint, it even favorably cited language stating that the regulations would require "'a supplier to disclose an original manufacturer's identity.'" ECF No. 1 ¶ 66; *see also id.* ¶¶ 70, 73. Elsewhere in its complaint, PCCA further made the same point while using various synonyms for "original manufacturers," including "Upstream Sources," "upstream ingredient

sources" or "downstream manufacturers." *See, e.g.*, *id.* ¶¶ 5, 48-49, 70. And even now, PCCA still construes the term "manufacturer" to mean a supplier's "Upstream Sources." ECF No. 35 at 5. All this shows that PCCA has consistently (and correctly) understood these regulations to require disclosure of the entity that created the drug substance—the original manufacturer. It cannot claim surprise at this requirement for the first time now.[1]

**B.    The Required Disclosure Is of Factual, Noncontroversial Information**

Next, PCCA argues that the regulations require it to falsely identify the original manufacturer as the manufacturer. But the original manufacturer of a drug ingredient *is* the manufacturer of the drug ingredient. And to the extent PCCA would like to highlight its own role too, nothing in the regulations create a barrier. PCCA can still, for instance, say it has repackaged the original manufacturer's ingredients and that repackagers can be deemed manufacturers. PCCA just cannot withhold the original manufacturer's identity, as it apparently seeks.

PCCA relies on two cases—both involving California's Proposition 65—for a contrary conclusion. Neither helps its position. In the first case, *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468 (9th Cir. 2022), the court found it misleading to call a substance a "known" carcinogen, when the State agreed that it "does not know that [this substance] causes cancer in humans. . . ." *Id.* at 479. The court explained that a reasonable person reading a warning saying that a product is "'known to the State of California to cause cancer'" might think that "California *knows* [the product] will increase their risk for cancer"—which would not be true. *Id.* (emphasis in original). In the second case, *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263 (9th Cir. 2023), the court found it misleading to call glyphosate a "known" carcinogen, even if technically accurate considering the "'complex legal meaning'" of "known" under Proposition 65. *Id.* at 1278 (citation omitted). The court explained that the legal

---

[1] PCCA also argues that if the regulations are meant to cover only original manufacturers, then they are impermissibly vague because they do not define "original manufacturer." ECF No. 35 at 9 n.6. But PCCA never explains why such a definition is necessary. Nor is it true that the regulations are vague. They simply require suppliers of ingredients, like PCCA, to identify the manufacturer of these ingredients. And while true that, in some contexts, the term manufacturer can be broad and include suppliers, the regulations here remain readily understandable and focused on the original manufacturer, as PCCA and others showed they understood in their comments on the regulations before adoption. *See* ECF No. 1-2 at 2-3, 1-3 at 2, 1-4 at 2.

1  meaning of "known" strayed from the common understanding, no "strong scientific consensus"
2  showed glyphosate to be a carcinogen, and the regulatory body seeking to label glyphosate as
3  probably carcinogenic to humans "st[ood] essentially alone" in holding this view, with federal
4  regulators "and regulators from around the world" finding differently. *Id.*

5  Both these cases, then, involved mandatory warning labels that courts believed consumers
6  could readily misunderstand. Neither is comparable to the facts here. To start, both cases
7  involved disclosures to the general public, not, as here, only disclosures to sophisticated,
8  regulated actors (namely, compounding pharmacies). More fundamentally, it makes no sense to
9  say that an entity charged with answering an open-ended question (in this case, who is the
10 ingredient manufacturer?) is forced to make a false or controversial statement in answering this
11 question. Nor is anyone going to be misled in being told that the entity that originally produced
12 an ingredient is the ingredient's manufacturer. And to the extent PCCA still has concerns,
13 however misguidedly, it retains significant leeway in complying with the regulations. Nothing in
14 the regulations, after all, require PCCA to identify the ingredient manufacturer in any particular
15 way or prohibit any particular speech. They simply require PCCA to identify this manufacturer.

16 **C.    The Regulations Are Justified and Not Unduly Burdensome**

17 PCCA next argues that the regulations are unduly burdensome and unjustified.

18 *First*, PCCA claims the regulations would destroy its "trade secrets" by requiring it to
19 disclose the ingredient manufacturers and "would give competitors (and even customers) the
20 ability to source directly from PCCA's Upstream Sources. . . ." ECF No. 35 at 11. But PCCA
21 misreads the regulations: Nothing in the regulations require PCCA to inform its competitors
22 about these manufacturers' identities. PCCA also misunderstands the unduly-burdensome
23 requirement. As covered in the motion to dismiss, ECF No. 33-1 at 11-13, the Supreme Court's
24 precedent applying *Zauderer* undercuts PCCA's claim that courts must account for potential
25 financial impacts. PCCA makes no attempt to distinguish this precedent. It also fails in its effort
26 to distinguish a D.C. Circuit case that applied *Zauderer* and found an alleged excessive financial
27 burden is not "a burden on *speech*." *Am. Hosp. Ass'n v. Azar*, 983 F.3d 528, 541 (D.C. Cir. 2020)
28 (emphasis in original). Rather than distinguish the case, PCCA shifts topics and returns to its

claim that the regulations here compel false speech and prohibit truthful speech—which, again, is simply not true. ECF No. 35 at 11. PCCA also claims the Ninth Circuit in *Pharm. Rsch. & Manufacturers of Am. v. Stolfi*, 153 F.4th 795 (9th Cir. 2025) (*Stolfi*) accounted for the potential loss of a trade secret when considering a First Amendment challenge to regulations covering drug manufacturers. ECF No. 35 at 11. But in rejecting the First Amendment challenge there, the court never discussed the potential loss of a trade secret. *See Stolfi*, 153 F.4th at 826-828.

*Second*, PCCA claims the Board could have achieved its purpose through less restrictive means, arguing that "[i]f the Board's true concern is ensuring regulatory access to supplier information, the Board could require disclosure to itself under confidentiality protections—not public disclosure to competitors." ECF No. 35 at 13. But again, nothing in the regulations require disclosure to competitors. And as discussed in ECF No. 33-1 at 10-11, *Zauderer* does not require courts to strike a disclosure requirement "merely because other possible means by which the State might achieve its purposes can be hypothesized." *Zauderer*, 471 U.S. at 651 n.14.

*Third*, PCCA claims the regulations would not promote public safety and argues an evidentiary showing would be necessary to prove otherwise. It is wrong. When a wholesaler sells ingredients to compounding pharmacies and fails to disclose the original manufacturer for these ingredients, the pharmacies are left unaware that they may be using ingredients from improper manufacturers and unable to verify whether these manufacturers are FDA-registered. *See* ECF No. 33-1 at 9. They are also less able to take appropriate steps if the Board informs them that a certain manufacturer has had a recall, for they would not know to act without knowing the manufacturer's identity. Case law shows that this potential for harm can be found "self-evident" even without an evidentiary record. *See Zauderer*, 471 U.S. at 652; *Small Bus. Fin. Ass'n v. Mohseni*, No. 24-50, 2025 WL 1111493, at *3 (9th Cir. Apr. 15, 2025) (the State "is not required to produce evidence of effectiveness" to justify a disclosure requirement).

PCCA's conclusory allegations otherwise are not enough to defeat a motion to dismiss. *See* ECF No. 35 at 12-13; *Loan Payment Admin. LLC v. Hubanks*, 821 F. App'x 687, 690 (9th Cir. 2020) (applying *Zauderer* and affirming motion to dismiss); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998) ("conclusory allegations of law and unwarranted inferences are not sufficient

to defeat a motion to dismiss"). It also suggests that regulators, like the Board, are "best positioned" to verify that a manufacturer is FDA-registered and asserts that PCCA has provided the Board with manufacturer identities during investigations. ECF No. 35 at 14, citing ECF No. 1 ¶ 62. But that the Board has been able to obtain this information during investigations, after a patient is harmed, does not further the Board's purpose to prevent harm before it occurs.

## II.   PCCA'S FIFTH AMENDMENT CLAIM IS BARRED UNDER SOVEREIGN IMMUNITY

Finally, PCCA maintains that it can pursue prospective injunctive and declaratory relief for its takings claim under *Ex parte Young*, 209 U.S. 123 (1908). ECF No. 35 at 15. It does not dispute that "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 201 (2019). It claims, however, that no such adequate provision exists here, citing an allegation in its complaint that it would have no means for obtaining compensation for the "loss in market position globally." ECF No. 35 at 15, citing ECF No. 1 ¶ 115.

But as noted in the motion to dismiss, ECF No. 33-1 at 20 n.3, "[a] loss of market share is not a direct appropriation of private property requiring compensation under Fifth Amendment takings jurisprudence." *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 154 F. Supp. 2d 1140, 1153 (W.D. Mich. 2001), *aff'd in part, remanded in part sub nom. Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435 (6th Cir. 2004). PCCA does not even dispute this. It instead shifts its argument and, citing nothing, suggests that California law does not allow compensation for takings of trade secrets—something it never alleged in its complaint. ECF No. 35 at 15. But California law does allow parties to seek just compensation for takings of property, including for trade secrets. *See Weiss v. People ex rel. Dep't of Transportation*, 9 Cal. 5th 840, 853 (2020); *Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1167 (2006) (California takings law protects "intangible trade secret property rights protected by state law").[2]

## CONCLUSION

The Complaint should be dismissed in its entirety with prejudice.

---

[2] PCCA also claims that sovereign immunity is inapplicable because the court in *Stolfi* never mentioned sovereign immunity when considering a takings claim. ECF No. 35 at 16. But this lack of mention perhaps indicates waiver, not the inapplicability of sovereign immunity.

5

Dated: December 19, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General


*/s/ David Green*
DAVID GREEN
Deputy Attorney General
*Attorneys for Defendants*