1

2

3

4

5

6

7                  UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

10  PROFESSIONAL COMPOUNDING          No. 2:25-cv-02799-JAM-CSK
    CENTERS OF AMERICA, INC.,
11
                 Plaintiff,
12                                    **ORDER GRANTING MOTION TO DISMISS**
         v.                           **AND DENYING MOTION FOR**
13                                    **PRELIMINARY INJUNCTION**
    ANNE SODERGREN, Executive
14  Officer of the California
    Board of Pharmacy, et al.,
15
                 Defendants.
16

17       Plaintiff, which tests, repackages, and supplies

18  pharmaceutical ingredients to compounding pharmacies, challenges

19  new regulations recently approved by the California State Board

20  of Pharmacy (the "Board") which will require it to disclose the

21  original manufacturers of those ingredients, the identities of

22  which Plaintiff currently keeps confidential.  Plaintiff alleges

23  that these regulations violate its First Amendment rights, as the

24  regulations will compel Plaintiff to falsely state that the

25  original manufacturers are the manufacturers of the ingredients

26  even though Plaintiff qualifies as a manufacturer under both

27  California and federal law.  Plaintiff also alleges that the

28  regulations violate its Fifth Amendment rights, as the

                                1

1    regulations will require Plaintiff to reveal its valuable trade

2    secrets, i.e., the identities of the original manufacturers,

3    which constitutes a regulatory taking.  Plaintiff moves to

4    preliminarily enjoin enforcement of the regulations based on

5    these alleged constitutional violations.

6        Defendants, the officers and members of the Board, oppose

7    the injunction, and move to dismiss Plaintiff's claims.

8    Defendants argue the regulations pass constitutional scrutiny

9    under the applicable First Amendment standard because they compel

10   a purely factual and noncontroversial disclosure, the identities

11   of the original manufacturers, while also permitting Plaintiff

12   leeway to describe their manufacturing role in testing and

13   repackaging the ingredients.  Defendants further argue that

14   Plaintiff's Fifth Amendment claim fails as a matter of law

15   because Plaintiff seeks only equitable relief, which is generally

16   unavailable for Fifth Amendment takings claims when damages are

17   available.  Finally, Defendants argue Plaintiff's remaining claim

18   for declaratory relief fails as it is premised on Plaintiff's

19   First and Fifth Amendment claims.

20       As further discussed below, the Court agrees with Defendants

21   and grants their Motion to Dismiss.  First, the Court finds that

22   the disclosures compelled by the regulations pass constitutional

23   muster as they are purely factual, noncontroversial, and not

24   unjustified or unduly burdensome.  The Court also finds that

25   Plaintiff has inadequately alleged that damages are insufficient

26   or unavailable for their Fifth Amendment takings claim such that

27   equitable relief is permitted.  Finally, the Court finds

28   Plaintiff's final claim for declaratory relief, which is based on

1    their First and Fifth Amendment claims, must be dismissed as

2    well.  Accordingly, the Court dismisses Plaintiff's Complaint

3    with leave to amend.

4        The Court also denies Plaintiff's requested preliminary

5    injunction.  The threshold issue for preliminary injunctive

6    relief is likelihood of success on the merits.  Given that

7    Plaintiff has failed to adequately plead any of its claims, the

8    Court finds that Plaintiff has also failed to show a likelihood

9    of success on the merits.

10       **I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

11       Plaintiff Professional Compounding Centers of America, Inc.

12   is a "leader in the compounded drug industry."  Compl. ¶ 8, ECF

13   No. 1.  Compounding is a practice in which a licensed pharmacist

14   combines, mixes, or alters ingredients of a drug to create a

15   medication tailored to the needs of an individual patient.  Id.

16   ¶ 39.  Compounding serves an important role for patients whose

17   clinical needs cannot be met by commercially available over the

18   counter or prescription drugs, such as when a patient is allergic

19   to an ingredient, needs a different dosage strength, or needs to

20   receive a drug in a different form (e.g., as a topical cream

21   instead of a pill).  Id. ¶ 40.

22       Plaintiff is not itself a compounding pharmacy.  Id. ¶ 42.

23   Rather, Plaintiff manufacturers and supplies active

24   pharmaceutical ingredients ("APIs") and inactive ingredients to

25   licensed compounding pharmacies.  Id.  Plaintiff is a

26   manufacturer of these ingredients under California law, which

27   defines "manufacturer" broadly to "include[] every person who

28   prepares, derives, produces, compounds, or repackages any drug."

1  Id. ¶ 43. (quoting Cal. Bus. & Prof. Code § 4033).  Plaintiff is

2  also a manufacturer under federal law.  Id. ¶ 44.  As a

3  manufacturer, Plaintiff engages in several "sophisticated

4  manufacturing processes," including (1) testing ingredients

5  against established specifications; (2) performing identity

6  verification, purity analysis, and safety testing; (3) issuing

7  Certificates of Analysis ("COAs") based on testing results;

8  (4) performing periodic facility audits and quality assessments

9  of its suppliers; and (5) rejecting products that fail to meet

10 its standards.  Id. ¶ 45.

11     Plaintiff purchases APIs and other pharmaceutical

12 ingredients from a variety of sources ("Upstream Sources") that

13 it keeps confidential.  Id. ¶¶ 4-5.  Plaintiff has "spent

14 significant resources authenticating, sourcing, and testing its

15 Upstream Sources and their products."  Id. ¶ 50.  Plaintiff has

16 "established standards and procedures through which it engages in

17 due diligence on the Upstream Sources," including requiring that

18 the Upstream Sources be inspected by the United States Food and

19 Drug Administration ("FDA") or another recognized authority or be

20 audited by Plaintiff.  Id. ¶ 51.  Plaintiff also vets and

21 authenticates APIs through its own testing, and rejects products

22 that fail testing, even if the Upstream Source represents that it

23 passed.  Id. ¶¶ 52-54.

24     Plaintiff's Upstream Sources are not known to Plaintiff's

25 competitors or customers, and Plaintiff's business would be

26 devastated if the Upstream Sources became publicly known.  Id.

27 ¶¶ 50, 57, 60, 112.  Plaintiff is in compliance with FDA

28 requirements related to the disclosure of the manufacturer on

4

COAs and labeling, and the FDA does not require disclosure of
Plaintiff's Upstream Sources.  Id. ¶¶ 5, 48-49.  However,
Plaintiff alleges the confidentiality of its Upstream Sources is
now threatened, as the Board recently approved a series of
amendments to the Compounded Drug Preparations Regulations,
specifically Title 16, Division 17, Articles 4.5, 4.6, 4.7 and
4.8 of the California Code of Regulations (the "Regulations"),
which took effect October 1, 2025.  Id. ¶¶ 63-84.  The
Regulations require pharmaceutical ingredient suppliers to
disclose the manufacturer of each API that a compounding pharmacy
purchases.  Id. ¶¶ 28, 65; Cal. Code Regs. tit. 16, §§ 1736.9(d),
1738.11(b).  Suppliers must provide this information in their
COAs, which provide the results of chemical testing performed on
the APIs.  Compl. ¶¶ 28, 65.  The Regulations also require
compounding pharmacies to maintain a compounding record that
lists the manufacturer for "each component" of a compounded drug.
Id. ¶¶ 28, 64; Cal. Code Regs. tit. 16, §§ 1735.7(c), 1736.11(c),
1738.9(b).

     As applied to Plaintiff, the Regulations require Plaintiff
to remove its own name as the "manufacturer" from its COAs and
state that other entities, i.e., the Upstream Sources, are the
manufacturers of the pharmaceutical ingredients it sells.  Compl.
¶ 3.  The Board has made clear that it will not accept
Plaintiff's identification of itself as the "manufacturer" on
COAs and compounding records, despite Plaintiff's status as a
manufacturer under both California and federal law.  Id. ¶ 29.
If Plaintiff's COAs and its customers' compounding records do not
list the Upstream Sources, Plaintiff and its customers will be

5

1    subject to fines, penalties, and other enforcement actions from

2    the Board.  Id.  Plaintiff alleges that this change in the law

3    compels Plaintiff to make false, misleading, and controversial

4    statements about the identity of the "manufacturer" and the party

5    responsible for the pharmaceutical ingredients Plaintiff sells.

6    Id. ¶ 30.  Plaintiff also argues the Regulations force Plaintiff

7    to disclose trade secrets, its Upstream Sources, without just

8    compensation, which will destroy the competitive advantage that

9    Plaintiff has built through more than 40 years of investment in

10   its API source due diligence, facility audits, and quality

11   control.  Id.

12       The present action includes claims for (1) injunctive and

13   declaratory relief based on unlawful restraint of speech in

14   violation of the First Amendment, (2) injunctive and declaratory

15   relief based on violation of the Fifth Amendment Takings Clause,

16   and (3) declaratory relief based on the Declaratory Judgment Act,

17   28 U.S.C. §§ 2201-2202.  ECF No. 1.  Plaintiff filed a Motion for

18   Preliminary Injunction (ECF No. 6) a few days after filing its

19   Complaint, arguing this Court should preliminarily enjoin

20   enforcement of the Regulations as Plaintiff is likely to prevail

21   on the merits of its First Amendment and Fifth Amendment claims.

22   Defendants Anne Sodergren, Executive Officer of the Board; Julie

23   Ansel, Deputy Executive Officer of the Board; Seung Oh, President

24   of the Board; Jessica Crowley, Vice President of the Board;

25   Trevor Chandler, Treasurer of the Board; Renee Armendariz, Member

26   of the Board; Kartikeya Jha, Member of the Board; Satinder

27   Sandhu, Member of the Board; Maria D. Serpa, Member of the Board;

28   Nicole Thibeau, Member of the Board; Jeanette Dong, Member of the

6

1  Board; Jeff Hughes, Member of the Board; Claudia L. Mercado,

2  Member of the Board; Jason Newell, Member of the Board; and

3  Ricardo Sanchez, Member of the Board, filed an Opposition (ECF

4  No. 27), and Plaintiff filed a Reply (ECF No. 29).[1]  The motion

5  was submitted without oral argument pursuant to Local Rule

6  230(g).  ECF No. 32.

7        On November 25, 2025, Defendants filed a Motion to Dismiss

8  (ECF No. 33) seeking to dismiss all of Plaintiff's claims.

9  Plaintiff filed an Opposition (ECF No. 35) and Defendants filed a

10 Reply (ECF No. 38).  That motion was also submitted without oral

11 argument pursuant to Local Rule 230(g).  ECF No. 40.

12                        **II.  LEGAL STANDARD**

13       A.   <u>Motion to Dismiss</u>

14       Under Federal Rule of Civil Procedure Rule 12(b)(1), a party

15 may move to dismiss a complaint for lack of subject-matter

16 jurisdiction, including when a plaintiff's claims are barred by

17 sovereign immunity.  <u>See</u> <u>Sato v. Orange Cnty. Dep't of Educ.</u>, 861

18 F.3d 923, 927 n.2 (9th Cir. 2017) (a sovereign immunity defense

19 "may be raised in either a Rule 12(b)(1) or 12(b)(6) motion").

20       Under Rule 12(b)(6), a party may also challenge the

21 sufficiency of a complaint for "failure to state a claim upon

22 which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The

23 court assumes all factual allegations are true and construes

24 "them in the light most favorable to the nonmoving party."

25 <u>Steinle v. City & Cnty. of San Francisco</u>, 919 F.3d 1154, 1160

26 (9th Cir. 2019) (quoting <u>Parks Sch. of Bus., Inc. v. Symington</u>,

27 51 F.3d 1480, 1484 (9th Cir. 1995)).  The motion may be granted

28 ─────────────
[1] All Defendants are sued in their official capacities.

1    only if the complaint lacks a "cognizable legal theory or

2    sufficient facts to support a cognizable legal theory."

3    <u>Mendiondo v. Centinela Hosp. Med. Ctr.</u>, 521 F.3d 1097, 1104 (9th

4    Cir. 2008).

5         A complaint need contain only a "short and plain statement

6    of the claim showing that the pleader is entitled to relief,"

7    Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations."

8    <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  However,

9    this rule demands more than unadorned accusations; "sufficient

10   factual matter" must make the claim at least plausible.  <u>Ashcroft</u>

11   <u>v. Iqbal</u>, 556 U.S. 662, 678 (2009).  In the same vein, conclusory

12   or formulaic recitations of elements do not alone suffice.  <u>Id.</u>

13   "A claim has facial plausibility when the plaintiff pleads

14   factual content that allows the court to draw the reasonable

15   inference that the defendant is liable for the misconduct

16   alleged."  <u>Id.</u>

17        In granting a motion to dismiss, a court must also decide

18   whether to grant leave to amend.  Leave to amend should be freely

19   given in the absence of undue delay, bad faith or dilatory

20   motive, undue prejudice to the opposing party, or futility of

21   amendment.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence</u>

22   <u>Cap., LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).

23   Dismissal without leave to amend is proper only if the complaint

24   cannot be saved by any amendment.  <u>Intri-Plex Techs., Inc. v.</u>

25   <u>Crest Grp., Inc.</u>, 499 F.3d 1048, 1056 (9th Cir. 2007).

26        B.   <u>Motion for Preliminary Injunction</u>

27        "A preliminary injunction is an extraordinary remedy never

28   awarded as of right."  <u>Winter v. Nat. Res. Def. Council, Inc.</u>,

8

1    555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary

2    injunction must establish that he is likely to succeed on the

3    merits, that he is likely to suffer irreparable harm in the

4    absence of preliminary relief, that the balance of equities tips

5    in his favor, and that an injunction is in the public interest."

6    Id. at 20.  A preliminary injunction may only be awarded "upon a

7    clear showing" of evidence that supports each relevant

8    preliminary injunction factor.  Id. at 22.

9                           **III. OPINION**

10        A.   Defendants' Motion to Dismiss

11             1.   Plaintiff's First Amendment Claim is Insufficiently

12                  Pled

13        The First Amendment provides, in part, that "Congress shall

14    make no law . . . abridging the freedom of speech."  U.S. Const.

15    amend. I.  Commercial speech, while "afforded less protection

16    than private, noncommercial speech, it is still entitled to the

17    protections of the First Amendment."  Nat'l Ass'n of Wheat

18    Growers v. Bonta ("NAWG"), 85 F.4th 1263, 1275 (9th Cir. 2023).

19    The Supreme Court has recognized two levels of scrutiny governing

20    commercial speech.  First, a law that prohibits or restricts

21    commercial speech must survive "intermediate" scrutiny, under

22    which the restriction must "directly advance" a "substantial"

23    governmental interest with means that are not "more extensive

24    than necessary" to be upheld.  Cent. Hudson Gas & Elec. Corp. v.

25    Pub. Serv. Comm'n of New York, 447 U.S. 557, 564-66 (1980).

26    Second, a law that compels the disclosure of "purely factual and

27    uncontroversial information" about the goods or services the

28    speaker offers is governed by the more permissive Zauderer

1  standard of review.  *Zauderer v. Off. of Disciplinary Couns. of*
2  *Sup. Ct. of Ohio*, 471 U.S. 626, 651 (1985).  Under *Zauderer*, the
3  government may compel commercial speech so long as the compelled
4  speech is purely factual, noncontroversial, reasonably related to
5  a substantial government interest, and not unduly burdensome.
6  *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d
7  749, 755-56 (9th Cir. 2019) (en banc).  The Ninth Circuit has
8  described this standard as "akin to rational basis review."
9  *Pharm. Rsch. & Manufacturers of Am. v. Stolfi ("Stolfi II")*, 153
10 F. 4th 795, 810-11 (9th Cir. 2025).

11      Here, the Parties agree that *Zauderer* supplies the
12 applicable First Amendment standard.  Under *Zauderer*, Plaintiff
13 alleges that the Regulations violate its rights under the First
14 Amendment by requiring it to disclose its Upstream Sources on its
15 COAs as the manufacturers of APIs it sells to compounding
16 pharmacies.  Compl. ¶¶ 98-105.  Plaintiff contends this compelled
17 disclosure is false and controversial because Plaintiff is not
18 permitted to list itself as the manufacturer of the APIs despite
19 the fact that it qualifies as a manufacturer under California and
20 federal law.  *Id.* ¶¶ 94-99.  Plaintiff also argues the disclosure
21 requirement is more extensive than necessary to achieve
22 Defendant's stated purpose of increasing patient safety.  *Id.*
23 ¶¶ 103-04.

24      Defendants contend that the Regulations require the
25 disclosure of purely factual, noncontroversial information —
26 namely, the identity of the original ingredient manufacturer.
27 Mot. Dismiss at 6-8, ECF No. 33-1.  Defendants further argue that
28 the disclosure requirement is justified and reasonably related to

1    California's interest in ensuring that compounding pharmacies

2    know the source of their ingredients to limit risks to patients.

3    Id. at 9-11.  Finally, Defendants argue that the Regulations are

4    not unduly burdensome as they merely require Plaintiff to

5    disclose the original manufacturer of the APIs it sells while

6    permitting Plaintiff "substantial flexibility to describe their

7    own role, if any, in testing, relabeling, and repackaging

8    ingredients sold to compounding pharmacies."  Id. at 11-13.

9         For the reasons discussed below, the Court agrees with

10   Defendants, and finds that the Regulations pass scrutiny under

11   Zauderer.  Accordingly, Plaintiff's First Amendment claim is

12   dismissed.

13              a.    The Regulations Require Disclosure of

14                    Factual, Noncontroversial Information

15        Under Zauderer, government-compelled commercial speech must

16   be "purely factual and uncontroversial."  Zauderer, 471 U.S. at

17   651.  As the Ninth Circuit has explained, "[i]nformation that is

18   purely factual is necessarily 'factually accurate,' but that

19   alone is not enough to qualify for the Zauderer exception."

20   NAWG, 85 F.4th at 1276.  Rather, "a statement may be literally

21   true but nonetheless misleading and, in that sense, untrue."

22   CTIA — The Wireless Ass'n v. City of Berkeley ("CTIA II"), 928

23   F.3d 832, 847 (9th Cir. 2019), cert. denied, 140 S. Ct. 658

24   (2019).  To be misleading, a disclosure must create an important

25   but false implication about the product offered.  See Cal.

26   Chamber of Com. v. Council for Educ. & Rsch. on Toxics ("CERT"),

27   29 F.4th 468, 479 (9th Cir. 2022), reh'g denied, 51 F.4th 1182

28   (Oct. 26, 2022).  Thus, disclosures must be assessed both

                                11

1  "sentence by sentence" to determine if they are "literally true,"

2  as well as in totality to determine if they are misleading.  See

3  CTIA II, 928 F.3d at 846–47; NAWG, 85 F.4th at 1276–79.

4      Here, the Regulations require that Plaintiff disclose the

5  original manufacturer of the APIs it sells to compounding

6  pharmacies in its COAs.  Plaintiff maintains that this disclosure

7  is false and misleading as Plaintiff will be compelled to

8  "identify other entities as the 'manufacturer' of its component

9  ingredients, despite the fact that [Plaintiff] is the

10  'manufacturer' under state and federal law."  Opp'n Mot. Dismiss

11  at 7, ECF No. 35.  However, the Court disagrees with Plaintiff's

12  characterization that this statement is factually inaccurate.

13  Plainly stated, the original manufacturer of a pharmaceutical

14  ingredient is the manufacturer of that ingredient.  That

15  Plaintiff may also be deemed a "manufacturer" under the law does

16  not undo this fact.

17      The Court also finds that this compelled disclosure is not

18  misleading.  Plaintiff does not allege that the original

19  manufacturers are not, in fact, involved in the manufacturing

20  process.  Further, as Defendants argue, if Plaintiff believes it

21  is misleading to list only the original manufacturer on its COAs,

22  nothing in the Regulations restrict Plaintiff from explaining it

23  is also a "manufacturer" under the law because it tests,

24  repackages, and resells the pharmaceutical ingredients.  Mot.

25  Dismiss at 6–7.

26      Plaintiff does not dispute this nor allege that the

27  Regulations prevent such additional speech.  Rather, Plaintiff

28  objects that "[t]his 'flexibility' argument merely allows the

1  State to compel [Plaintiff] to identify someone else as the

2  'manufacturer,' and then compel additional speech by requiring

3  [Plaintiff] to identify itself as the mere 'repackager' of the

4  drugs."  Opp'n Mot. Dismiss at 9.  However, contrary to

5  Plaintiff's argument, any such "additional speech" is not

6  compelled; rather, the Regulations afford Plaintiff the choice in

7  preparing its COAs to "note, for instance, that it has repackaged

8  the original manufacturer's ingredients and that repackagers can

9  be deemed manufacturers for certain purposes."  Mot. Dismiss at

10  7.  The sole restriction placed on Defendant is that they may not

11  omit the identity of the original manufacturer of the ingredient.

12  See Cal. Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b) ("When the

13  COA is received from a supplier, it must provide the name and

14  address of the manufacturer.").  This disclosure requirement is

15  purely factual.

16      Zauderer also requires that compelled commercial speech be

17  "uncontroversial" to pass constitutional scrutiny.  Whether

18  compelled speech is controversial is assessed under both

19  subjective and objective standards.  See NAWG, 85 F.4th at 1277.

20  "[T]he topic of the disclosure and its effect on the speaker is

21  probative of determining whether something is subjectively

22  controversial."  Id.  For example, in National Institute of

23  Family and Life Advocates v. Becerra ("NIFLA"), a group of

24  medical providers and crisis pregnancy centers challenged a

25  California statute requiring "licensed" abortion clinics to

26  notify women that California provides "immediate free or low-cost

27  access" to family planning services (including abortion) and

28  provide a phone number.  585 U.S. 755, 760-65 (2018).  The

1    Supreme Court held that the notice, while factual, was
2    controversial because "the compelled statement took sides in a
3    heated political controversy, forcing the clinic to convey a
4    message fundamentally at odds with its mission." CTIA II, 928
5    F.3d at 845. "While the effect on the speaker is one part of the
6    equation, an objective evaluation of 'controversy' is also an
7    important consideration." NAWG, 85 F.4th at 1277. For example,
8    in CERT, the Ninth Circuit affirmed a preliminary injunction
9    against the enforcement of Prop 65's warning requirement as
10   applied to a chemical called acrylamide, holding that a "robust
11   disagreement by reputable scientific sources" supported the
12   conclusion that the Prop 65 warning was "controversial." 29
13   F.4th at 472–74, 748.

14       Here, Plaintiff argues that the Regulations are
15   controversial because the Board's interpretation of
16   "manufacturer," which does not include Plaintiff, conflicts with
17   California and federal law, which does. Opp'n Mot. Dismiss at 9.
18   Plaintiff further argues that the Board's interpretation is
19   controversial because "[f]ar from being what a reasonable person
20   would define as a 'manufacturer,' the Upstream Sources simply
21   provide materials for [Plaintiff]." Id. at 10. Plaintiff,
22   "[t]hrough its efforts to identify and test the components of its
23   drugs[,] . . . is the manufacturer of those drugs and does not
24   believe it is appropriate to describe the Upstream Sources or
25   anyone else as a manufacturer of its APIs and other ingredients."
26   Id. at 9–10.

27       The Court does not find any controversy here. Subjectively,
28   the Regulations do not require Plaintiff to take "sides in a

14

1  heated political controversy" or "to convey a message

2  fundamentally at odds with its mission."  CTIA II, 928 F.3d at

3  845 (discussing controversial disclosures).  The Regulations

4  simply charge Plaintiff with revealing basic information — the

5  original manufacturers of the pharmaceutical ingredients it

6  sells.  Nor do the Regulations require Plaintiff to deliver a

7  government-scripted message about an objectively debatable topic,

8  as Plaintiff does not allege or point to any debate among

9  reputable sources that the original manufacturers are not

10 properly deemed manufacturers under the law.  While Plaintiff may

11 disagree with describing its Upstream Sources rather than itself

12 as the "manufacturer" of ingredients it sells, "a disclosure may

13 be 'purely factual and uncontroversial' although it disturbs the

14 party being compelled to make the disclosure[.]"  Nationwide

15 Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 732 (9th Cir. 2017);

16 see also Nat'l Retail Fed'n v. James, __ F. Supp. 3d __, 2025 WL

17 2848212, at *6 (S.D.N.Y. Oct. 8, 2025) ("The Second Circuit has

18 been clear that a compelled commercial disclosure is not rendered

19 'controversial' merely because the regulated entity does not wish

20 to make that disclosure or because they would prefer to make a

21 different statement on that same topic.").

22            b.   The Disclosure Requirement is Reasonably

23                 Related to a Substantial Governmental

24                 Interest

25      Additionally, "the government may compel truthful disclosure

26 in commercial speech as long as the compelled disclosure is

27 'reasonably related' to a substantial governmental interest."

28 CTIA — The Wireless Ass'n v. City of Berkeley ("CTIA I"), 854

1   F.3d 1105, 1115 (9th Cir. 2017); see also Zauderer, 471 U.S. at

2   651.  It is enough that the compelled disclosure furthers "some

3   substantial — that is, more than trivial — governmental

4   interest." CTIA II, 928 F.3d at 844.  To determine whether a law

5   is reasonably related to the state's interest, courts look to

6   whether there is a reasonable relationship between the purpose of

7   the law and the requirements of the law itself.  See Owen, 873

8   F.3d at 734 (concluding that the instant statute survives

9   Zauderer review because "the disclosure requirements have a

10  relationship to preventing deception"); see also Spirit Airlines,

11  Inc. v. U.S. Dep't of Transp., 687 F.3d 403, 414-15 (D.C. Cir.

12  2012) (rule "requiring the total price [of airfare] to be the

13  most prominent number [in print advertisements and on websites]

14  is reasonably related" to the government's "interest in

15  preventing deception of consumers").

16      Here, Defendants argue that "the Board plainly has a

17  substantial interest in ensuring that compounding pharmacies know

18  the source of their ingredients to limit risks to patients."

19  Mot. Dismiss at 9.  Defendant argues that when a supplier like

20  Plaintiff "fails to disclose these manufacturers to compounding

21  pharmacies, the pharmacies are left in the dark about the

22  ingredients they are purchasing," and "are consequently unaware

23  that they may be using ingredients from improper manufacturers"

24  without the ability "to verify whether these manufacturers are

25  FDA-registered."  Id. (citing Cal. Code Regs. tit. 16,

26  §§ 1736.9(d), 1738.11(b) ("API and excipient components used to

27  compound a radiopharmaceutical shall be manufactured by an FDA-

28  registered facility").  Without information concerning the

16

original manufacturer, pharmacies are also "less able to take appropriate steps when a recall occurs." Id. Defendants argue this "potential for harm is 'self-evident' even without an evidentiary record." Id.

The Court agrees. Defendants claim the Regulations will promote patient safety by ensuring compounding pharmacies are informed of the origin of the ingredients used in patients' drugs. It has long been recognized that states have a substantial interest in protecting the health and safety of their citizens. See CTIA II, 928 F.3d at 845 ("There is no question that protecting the health and safety of consumers is a substantial governmental interest."); Hill v. Colorado, 530 U.S. 703, 715 (2000) ("It is a traditional exercise of the States' police powers to protect the health and safety of their citizens." (internal quotation marks and citation omitted)).

Plaintiff does not contest that Defendants' stated purpose, increased patient safety, qualifies as a substantial interest. Rather, Plaintiff argues that the Regulations are not "reasonably related" to ensuring patient safety because less restrictive alternatives to achieving this goal exist. Opp'n Mot. Dismiss at 12. For example, Plaintiff argues "[i]f the Board's true concern is ensuring regulatory access to supplier information, the Board could require disclosure to itself under confidentiality protections — not public disclosure to competitors." Id. Plaintiff also argues that the Regulations "will provide no meaningful increase in patient safety and [will] actually undermine [Plaintiff]'s safety and quality record demonstrated over many years." Id. at 12-13.

1    Plaintiff misunderstands Zauderer's burden.  Unlike Central

2  Hudson's intermediate scrutiny — where commercial speech

3  restrictions must directly and materially advance the asserted

4  governmental interest, see Lorillard Tobacco Co. v. Reilly, 533

5  U.S. 525, 555 (2001) — Zauderer employs "less exacting scrutiny,"

6  Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. 229,

7  249 (2010).  Whereas Defendants would have to provide evidence of

8  the Regulations' effectiveness to satisfy Central Hudson, "such

9  evidentiary parsing is hardly necessary" under Zauderer.  Am.

10  Meat Inst. v. U.S. Dep't of Agric., 760 F.3d 18, 26 (D.C. Cir.

11  2014); see also Small Bus. Fin. Ass'n v. Mohseni, No. 24-50, 2025

12  WL 1111493, at *3 (9th Cir. Apr. 15, 2025) (the State "is not

13  required to produce evidence of effectiveness" to justify a

14  disclosure requirement).  As other circuits have explained,

15          [C]onstitutionality under [Zauderer] does not
16          hinge upon some quantum of proof that a
           disclosure will realize the underlying
17          purpose.  A common-sense analysis will do.
           And the disclosure has to advance the purpose
18          only slightly.

19  Disc. Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509,

20  557 (6th Cir. 2012) (citing Nat'l Elec. Mfrs. Ass'n v. Sorrell,

21  272 F.3d 104, 115 (2d Cir. 2001))).

22    For example, in CTIA II, the plaintiff challenged an

23  ordinance passed by the City of Berkeley requiring cell phone

24  retailers to inform prospective cell phone purchasers of the

25  risks of radiofrequency radiation from carrying cell phones on

26  their person.  928 F.3d at 836-38.  This warning was required as

27  part of the Federal Communications Commission's ("FCC")

28  regulatory scheme in order for cell phone manufacturers to obtain

1   FCC device approval.  _Id._ at 840–41.  Plaintiff argued that this

2   measure was not reasonably related to Berkeley's stated purpose

3   of protecting consumer's health because the "radio-frequency

4   radiation from cell phones ha[d] not been proven dangerous to

5   consumers."  _Id._ at 846.  The Ninth Circuit rejected this

6   argument, however, finding that while plaintiff was "correct in

7   pointing out that there was nothing then before the district

8   court showing that such radiation had been proven dangerous,"

9   that was "beside the point."  _Id._  The court found that,

10  "[a]greeing with the FCC that the information about [radio-

11  frequency radiation] limits and methods of avoiding excessive

12  exposure is important, Berkeley requires cell phone retailers to

13  provide some of that same information to consumers and to direct

14  them to their user manuals for further details."  _Id._  As the

15  court held, "[w]e are not in a position to disagree with the

16  conclusions of FCC and Berkeley that this compelled disclosure is

17  'reasonably related' to protection of the health and safety of

18  consumers."  _Id._

19       Similarly, here, Defendants argue that they passed the new

20  Regulations to "ensure that compounding pharmacies knew the

21  manufacturers of the ingredients they purchased to promote

22  accountability and allow these pharmacies to take appropriate

23  steps to protect client safety."  Mot. Dismiss at 11.  Defendants

24  contend that the "Board's new regulations are consistent with

25  FDA's practices," as the FDA has previously issued warning

26  letters to suppliers encouraging them "to clearly identify the

27  original API manufacturer as the API moves through the supply

28  chain."  _Id._ at 3; _see also_ Defs.' Req. Judicial Notice ("RJN"),

1    Exs. 3-5, ECF No. 33-2.[2]  Defendants further argue the FDA

2    continues to encourage suppliers to "ensure you have sufficient

3    supply chain transparency to mitigate risks to patients" and to

4    "clearly identify the original API manufacturer to customers who

5    use them to make the finished drugs," noting the potential

6    threats to patients in omitting this information.  Mot. Dismiss

7    at 3; RJN, Ex. 2.[3]

8        In sum, Defendants argue they passed the Regulations to

9    enhance patient safety by increasing supply chain transparency for

10   pharmaceutical ingredients in line with FDA guidance.  The Court

11   finds that Defendants' reasoning satisfies <u>Zauderer</u>'s lenient

12   standard.

13                  c.   The Regulations Are Not Unduly Burdensome

14       Finally, the Ninth Circuit has held that "[a] disclosure is

15   'unduly burdensome' when the burden 'effectively rules out' the

16   speech it accompanies."  <u>Owen</u>, 873 F.3d at 734 (citation

17   omitted); <u>see also</u> <u>NIFLA</u>, 585 U.S. at 778 (finding unduly

18   burdensome a disclosure requirement that "drowns out the

19   facility's own message").  In <u>NIFLA</u>, for example, the Court

20   reasoned that the nature of the disclosure and the level of

21   "'detail required . . . effectively rule[d] out' the possibility"

22   that the regulated party would speak at all.  585 U.S. at 778

23

---

24   [2] Courts may take judicial notice of official government guidance documents
     and other government publications.  <u>See</u>, <u>e.g.</u>, <u>Montera v. Premier Nutrition</u>

25   <u>Corp.</u>, 111 F.4th 1018, 1030 n.2 (9th Cir. 2024); <u>Crofts v. Issaquah Sch. Dist.</u>
     <u>No. 411</u>, 22 F.4th 1048, 1051 n.1 (9th Cir. 2022); <u>Smith v. L.A. Unified Sch.</u>

26   <u>Dist.</u>, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (noting that "courts routinely
     take judicial notice of letters published by the government").  Thus, the
     Court takes judicial notice of Exhibits 3 through 5, which are FDA warning

27   letters.
     [3] The Court takes judicial notice of Exhibit 2, which is an FDA policy

28   document, for the reasons stated in n.2 <u>supra</u>.

1  (quoting Ibanez v. Fl. Dep't of Bus. & Pro. Regul., 512 U.S. 136,

2  146 (1994)).

3      Defendants argue that the "[R]egulations here do no such

4  thing," as they "require only limited disclosures to

5  [Plaintiff]'s buyers (i.e., compounding pharmacies) and 'do not

6  rule out' [Plaintiff]'s ability to speak about the products it

7  sells, 'effectively or otherwise.'" Mot. Dismiss at 11.  Indeed,

8  Defendants argue the "[R]egulations provide suppliers like

9  [Plaintiff] with substantial flexibility to describe their own

10  role, if any, in testing, relabeling, and repackaging ingredients

11  sold to compounding pharmacies." Id.

12      The Court agrees with Defendants and finds that the limited

13  disclosures required by the Regulations are not unduly

14  burdensome.  See Milavetz, 559 U.S. at 250 (disclosure

15  requirement "do[es] not prevent [regulated parties] from

16  conveying any additional information").  This compelled

17  disclosure does not, therefore, "drown out" Plaintiff's own

18  message, or prevent Plaintiff from speaking altogether.

19      In opposition, Plaintiff argues that the "Regulations create

20  an extraordinary burden on [Plaintiff] by destroying the

21  confidentiality of its Upstream Sources, which undermines

22  [Plaintiff]'s ability to continue to conduct its business."

23  Opp'n Mot. Dismiss at 10.  "To prevail in a First Amendment

24  challenge, however, the [plaintiff] must demonstrate a burden on

25  [its] speech[,]" not finances.  Am. Hosp. Ass'n v. Azar, 983 F.3d

26  528 (D.C. Cir. 2020) (emphasis in original) (rejecting litigant's

27  argument that a claimed excessive financial burden was sufficient

28  to demonstrate an undue burden under Zauderer); see also

1   <u>Zauderer</u>, 471 U.S. at 651 (holding "unjustified or unduly

2   burdensome disclosure requirements might offend the First

3   Amendment by chilling protected commercial speech").  Plaintiff

4   alleges the Regulations impose such a burden by "preventing

5   [Plaintiff] from truthfully identifying itself as the

6   'manufacturer' and by forcing [Plaintiff] to false identify

7   another entity as the 'manufacturer' of a product that

8   [Plaintiff] creates."  Opp'n Mot. Dismiss at 11.  However,

9   Plaintiff has not plausibly alleged that the Regulations prevent

10  it from explaining its manufacturing role; rather, as held <u>supra</u>,

11  Plaintiff has merely alleged that the Regulations require the

12  disclosure of the original manufacturer, which is purely factual,

13  noncontroversial information.  <u>See</u> Compl. ¶¶ 94–105.  Thus,

14  Plaintiff has not alleged any cognizable burden on their speech.

15      For these reasons, the Court holds that Plaintiff has

16  insufficiently alleged the Regulations fail <u>Zauderer</u> scrutiny.

17  Thus, Plaintiff's First Amendment claim is dismissed.  While it

18  may prove difficult for Plaintiff to successfully plead a First

19  Amendment claim based on the Court's reasoning above, given that

20  this is the Court's first dismissal of Plaintiff's claims, the

21  Court will grant dismissal with leave to amend.

22          2.    <u>Plaintiff's Fifth Amendment Claim is Insufficiently</u>

23                <u>Pled</u>

24      "The Fifth Amendment's Takings Clause prohibits the taking

25  of 'private property . . . for public use, without just

26  compensation.'"  <u>Sierra Med. Servs. All. v. Kent</u>, 883 F.3d 1216,

27  1223 (9th Cir. 2018) (quoting U.S. Const. amend. V).  "A Takings

28  Clause claim requires proof that the plaintiff 'possesses a

1  'property interest' that is constitutionally protected.'"  Id.

2  (quoting Turncliff v. Westly, 546 F.3d 1113, 1118 (9th Cir.

3  2008)).  By its terms, the clause "does not prohibit the taking

4  of private property," but instead requires "compensation in the

5  event of [an] otherwise proper interference amounting to a

6  taking."  First Eng. Evangelical Lutheran Church of Glendale v.

7  Cnty. of Los Angeles, 482 U.S. 304, 314–15 (1987).

8       Here, Plaintiff alleges the Regulations' disclosure

9  requirement effects a regulatory taking under the Fifth Amendment

10  by requiring it to disclose its trade secrets, i.e., its Upstream

11  Sources.  Compl. ¶¶ 109–114.  Plaintiff requests injunctive

12  relief to prevent this taking, alleging that "there is no state

13  law means to obtain compensation for [Plaintiff]'s loss in market

14  position globally" such that "injunctive relief is the only

15  available and proper remedy."  Id. ¶ 115.  Defendant argues this

16  claim is barred by sovereign immunity under the Eleventh

17  Amendment because equitable relief is generally unavailable for

18  Fifth Amendment takings claims.  Mot. Dismiss at 13–14.

19       The Court agrees and finds that Plaintiff's claim as pled is

20  barred.  As stated above, "[t]he Takings Clause of the Fifth

21  Amendment . . . prohibits the government from taking private

22  property for public use without just compensation."  Palazzolo v.

23  Rhode Island, 533 U.S. 606, 617 (2001).  A taking can be either a

24  physical or regulatory taking; a regulatory taking occurs when

25  "government actions do not encroach upon or occupy the property

26  yet still affect and limit its use to such an extent that a

27  taking occurs."  Id.  Here, Plaintiff claims the effect of the

28  Regulations constitutes a regulatory taking.  Compl. ¶ 110.

1    The typical remedy for a taking is "just compensation."  <u>See</u>

2    <u>Knick v. Twp. of Scott</u>, 588 U.S. 180, 201 (2019).  "[B]ecause the

3    federal and nearly all state governments provide just

4    compensation remedies to property owners who have suffered a

5    taking, equitable relief is generally unavailable."  <u>Id.</u>

6    Therefore, "[a]s long as an adequate provision for obtaining just

7    compensation exists, there is no basis to enjoin the government's

8    action effecting a taking."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Ruckelshaus v.</u>

9    <u>Monsanto Co.</u>, 467 U.S. 986, 1016 (1984) ("Equitable relief is not

10   available to enjoin an alleged taking of private property for

11   public use, duly authorized by law, when a suit for compensation

12   can be brought against the sovereign subsequent to the taking.").

13   Here, Plaintiff argues that injunctive relief is appropriate

14   because there is no "state law allowing [Plaintiff] to recover

15   for the disclosure of its trade secrets."  Opp'n Mot. Dismiss at

16   13-15.  However, California law apparently allows parties to seek

17   just compensation for takings of property, including trade

18   secrets.  <u>See</u> <u>Weiss v. People ex rel. Dep't of Transportation</u>, 9

19   Cal. 5th 840, 853 (2020) ("The California Constitution gives

20   property owners the right to have a jury determine the

21   compensation they are owed when a public entity takes or damages

22   their property."); <u>Syngenta Crop Prot., Inc. v. Helliker</u>, 138

23   Cal. App. 4th 1135, 1167 (2006) ("The takings clauses of the

24   United States and California Constitutions protect not only

25   tangible property, but also intangible trade secret property

26   rights protected by state law.").

27   Plaintiff argues that, even if state law remedies were

28   available, "the Board ignores a recent Ninth Circuit decision in

24

which the plaintiff was seeking equitable relief from state
officials for a drug labeling regulation that plaintiff claimed
constituted a regulatory taking . . . [which] gave no hint that
the [c]ourt lacked jurisdiction under the Eleventh Amendment, or
that Ex parte Young somehow did not apply."  Opp'n Mot. Dismiss
at 15.  In that case, the plaintiff had alleged that Oregon's
Prescription Drug Price Transparency Act violated the Fifth
Amendment by requiring that pharmaceutical manufacturers publicly
disclose pricing and product information online, which the
plaintiff alleged amounted to a regulatory taking by mandating
disclosure of its trade secrets.  Pharm. Rsch. & Mfrs. of Am. v.
Stolfi ("Stolfi"), 724 F. Supp. 3d 1174, 1183-84 (D. Or. 2024).
The court found that the plaintiff was entitled to seek equitable
relief for its Fifth Amendment claim because the available
procedure for receiving just compensation was not adequate.  Id.
at 1190-91.  Specifically, the court concluded that following the
available procedures would require the plaintiff to file "a
multiplicity of suits involving the same underlying takings,"
which would be "incapable of compensating the manufacturers for
the repetitive, future takings that w[ould] occur."  Id. (quoting
Pharm. Rsch. & Mfrs. of Am. v. Williams, 64 F.4th 932, 945 (8th
Cir. 2023)).  The court subsequently granted summary judgment in
favor of the plaintiff.  Id. at 1190-91, 1202.  On appeal, the
Ninth Circuit reversed and remanded the court's grant of summary
judgment.  Stolfi II, 153 F.4th at 805.  However, the Ninth
Circuit did not address the district court's statements regarding
the availability of equitable relief with respect to plaintiff's
regulatory takings claim.

1       Absent clear direction from the Ninth Circuit, the Court is

2   not persuaded that it should ignore the weight of authority

3   precluding equitable relief for takings claims where monetary

4   damages are available, as they appear to be here.  Even if the

5   Court were inclined to do so, Plaintiff fails to allege or

6   explain why available state law remedies are inadequate.  Rather,

7   Plaintiff merely alleges that "there [are] no state law means to

8   obtain compensation for [Plaintiff]'s loss[.]"  Compl. ¶ 115.

9   Because Plaintiff has insufficiently alleged it will be prevented

10  from bringing suit to recover just compensation for any alleged

11  future takings, or that such remedies are inadequate, the Court

12  finds that Plaintiff "cannot seek injunctive or declaratory

13  relief for the alleged violations of the takings clause" here.

14  Los Molinos Mut. Water Co. v. Ekdahl, 695 F. Supp. 3d 1174, 1189

15  (E.D. Cal. 2023); see also Culinary Studios, Inc. v. Newsom, 517

16  F. Supp. 3d 1042, 1065 (E.D. Cal. 2021) (concluding that the

17  plaintiff's request for declaratory and injunctive relief under

18  their takings claims did not provide a basis for the Ex parte

19  Young exception because there was no indication that the

20  plaintiff could not seek just compensation through state law

21  procedures).

22      Thus, Plaintiff's Fifth Amendment claim is dismissed with

23  leave to amend.

24          3.  Claim for Declaratory Relief

25      Finally, Plaintiff seeks declaratory relief under the

26  Declaratory Judgment Act on her First and Fifth Amendment claims.

27  Compl. ¶¶ 118-28; see also Opp'n Mot. Dismiss at 15.  The Act

28  provides that "[i]n a case of actual controversy within its

26

1  jurisdiction . . . any court of the United States . . . may

2  declare the rights and other legal relations of any interested

3  party seeking such declaration, whether or not further relief is

4  or could be sought."  28 U.S.C. § 2201(a).  However, "[t]he

5  Declaratory Judgment Act does not provide an independent theory

6  for recovery; if the underlying claims are dismissed, . . . then

7  there is no basis for any declaratory relief."  Muhammad v.

8  Conner, No. 10-CV-1449 YGR, 2012 WL 2428937, at *3 (N.D. Cal.

9  Jun. 26, 2012) (citing Hoeck v. City of Portland, 57 F.3d 781,

10  787 (9th Cir. 1995)); see also Team Enters., LLC v. W. Inv. Real

11  Est. Tr., 721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) (explaining

12  the Declaratory Judgment Act is merely a procedural statute and

13  does not provide an independent theory for recovery).

14      Because the Court dismisses all of Plaintiff's underlying

15  claims, the Court grants dismissal of Plaintiff's cause of action

16  for declaratory relief as well with leave to amend.

17      B.   Plaintiff's Motion for Preliminary Injunction

18          1.   Plaintiff is Unlikely to Succeed on the Merits of

19               their First Amendment and Fifth Amendment Claims

20      When seeking a preliminary injunction, "[l]ikelihood of

21  success on the merits is a threshold inquiry and is the most

22  important factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d

23  985, 989 (9th Cir. 2020).

24      For the reasons discussed in Section A supra, the Court

25  finds that Plaintiff is unlikely to succeed on the merits of its

26  claims.  See, e.g., Smith v. Cal. Dep't of Corr. & Rehabs., No.

27  2:18-cv-2942-KJM-AC P, 2020 WL 1503431, at *4 (E.D. Cal. Mar. 30,

28  2020) ("[W]ithout a viable complaint the court cannot assess

27

1  plaintiff's likelihood of success on the merits[.]"), adopted by

2  2020 WL 2126831 (E.D. Cal. May 5, 2020); Jaax v. United States,

3  No. CV 08-06666 MMM (AGRx, 2008 WL 4630559, at *2 (C.D. Cal. Oct.

4  17, 2008) (denying ex parte motion for a temporary restraining

5  order where movant did not show "a probability of success on the

6  merits because his complaint, as presently formulated, fails to

7  state a claim on which relief may be granted").

8              2.    Consideration of the Remaining Winter Factors is

9                    Unnecessary

10     Because Plaintiff has failed to establish a likelihood of

11  success, the Court need not reach the remainder of the Winter

12  factors.  See Pimentel v. Dreyfus, 670 F.3d 1096, 1111 (9th Cir.

13  2012) ("[A]t an irreducible minimum the moving party must

14  demonstrate a fair chance of success on the merits, or questions

15  serious enough to require litigation." (quotation marks and

16  citation omitted)); see also Baird v. Bonta, 81 F.4th 1036, 1040

17  (9th Cir. 2023) (courts can deny a preliminary injunction without

18  "'consider[ing] the other [preliminary injunction] factors' if a

19  movant fails to show a likelihood of success on the merits")

20  (quoting Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848,

21  856 (9th Cir. 2017)); Smith v. Helzer, 95 F.4th 1207, 1215 (9th

22  Cir. 2024) (affirming denial of a preliminary injunction after

23  finding no likelihood of success and without discussing any other

24  preliminary injunction factor).

25                          **IV.  ORDER**

26     For the reasons set forth above, the Court GRANTS

27  Defendants' Motion to Dismiss (ECF No. 33) with leave to amend.

28  Plaintiff shall file an amended complaint, if any, within thirty

                                28

(30) days of this Order.  Defendants' response to Plaintiff's

Amended Complaint shall be filed within thirty (30) days

thereafter.  The Court further DENIES Plaintiff's Motion for

Preliminary Injunction (ECF No. 6).

    IT IS SO ORDERED.

Dated: January 23, 2026

_____
JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE