ROB BONTA, State Bar No. 202668
Attorney General of California
ANTHONY R. HAKL, State Bar No. 197335
Supervising Deputy Attorney General
DAVID GREEN, State Bar No. 287176
Deputy Attorney General
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone:  (916) 210-6242
 Fax:  (916) 324-8835
 E-mail:  David.Green@doj.ca.gov
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**ANNE SODERGREN, Executive Officer of the California State Board of Pharmacy, JULIE ANSEL, Deputy Executive Officer of the California State Board of Pharmacy, SEUNG OH, President of the California State Board of Pharmacy, JESSICA CROWLEY, Vice President of the California State Board of Pharmacy, TREVOR CHANDLER, Treasurer of the California State Board of Pharmacy, RENEE ARMENDARIZ BARKER, Member of the California State Board of Pharmacy, KARTIKEYA JHA, Board Member of the California State Board of Pharmacy, SATINDER SANDHU, Member of the California State Board of Pharmacy, MARIA D. SERPA, Member of the California State Board of Pharmacy, NICOLE THIBEAU, Member of the California State Board of Pharmacy, JEANETTE DONG, Member of the California State Board of Pharmacy, JEFF HUGHES, Member of the California State Board of Pharmacy, CLAUDIA L. MERCADO, Member of the California State Board of Pharmacy, JASON NEWELL, Member of the California State Board of Pharmacy, and RICARDO SANCHEZ, Member of the California State Board of Pharmacy, all in their official capacities,**<br><br>Defendants. | Case No. 2:25-cv-02799-JAM-CSK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:      May 5, 2026<br>Time:      1:00 p.m.<br>Dept.:      6<br> Judge:      The Honorable John<br>             A. Mendez |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................ 1

Background ................................................................................................................. 1

    I.     The Board Adopts Regulations Requiring Transparency in a Compounded Drug's Supply Chain ................................................................................. 1

    II.    PCCA's Challenge to the Board's Regulations ....................................... 3

Legal Standard ........................................................................................................... 4

Argument ..................................................................................................................... 5

    I.     Plaintiff Has Failed to State a Claim in Count One ................................ 5

        A.    *Zauderer* Provides the Applicable Standard of Scrutiny ........................ 5

        B.    The Regulations Satisfy the *Zauderer* Standard ..................................... 5

    II.    Plaintiff's Claim in Count Two Is Improperly Pled and Barred by Sovereign Immunity ................................................................................ 9

    III.   Plaintiff Lacks Standing to Bring, and Has Failed to State a Claim in, Count Three ........................................................................................... 12

    IV.   Plaintiff Has Failed to State a Claim in Count Four ............................ 15

Conclusion ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

**CASES**

*74 Pinehurst LLC v. New York*
    59 F.4th 557 (2d Cir. 2023)................................................................................................ 10

*Am. Beverage Ass'n v. City & Cnty. of San Francisco*
    916 F.3d 749 (9th Cir. 2019)............................................................................................... 5

*Am. Hosp. Ass'n v. Azar*
    983 F.3d 528 (D.C. Cir. 2020) ............................................................................................ 9

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)............................................................................................................ 4

*Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*
    655 F. Supp. 3d 270 (D. Del. 2023).................................................................................... 2

*Bankshot Billiards, Inc. v. City of Ocala*
    634 F.3d 1340 (11th Cir. 2011).......................................................................................... 12

*Boutilier v. Immigr. & Naturalization Serv.*
    387 U.S. 118 (1967)............................................................................................................ 12

*Coal. for Gov't Procurement v. Fed. Prison Indus.*
    154 F. Supp. 2d 1140 (W.D. Mich. 2001) ......................................................................... 12

*Colten v. Kentucky*
    407 U.S. 104 (1972)............................................................................................................ 12

*Crownholm v. Moore*
    652 F. Supp. 3d 1155 (E.D. Cal. 2023).............................................................................. 15

*Disc. Tobacco City & Lottery, Inc. v. United States*
    674 F.3d 509 (6th Cir. 2012) ............................................................................................. 8

*Edge v. City of Everett*
    929 F.3d 657 (9th Cir. 2019).............................................................................................. 12

*Eichenberger v. ESPN, Inc.*
    876 F.3d 979 (9th Cir. 2017).............................................................................................. 4

*Ideker Farms, Inc. v. United States*
    71 F.4th 964 (Fed. Cir. 2023)............................................................................................. 11

*Isaacson v. Mayes*
    84 F.4th 1089 (9th Cir. 2023)............................................................................................. 12

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Knick v. Twp. of Scott, Pennsylvania*
    588 U.S. 180 (2019).................................................................................................. 10

*Lockaway Storage v. Cnty. of Alameda*
    216 Cal. App. 4th 161 (2013)................................................................................... 11

*Los Angeles Cnty. Metro. Transportation Auth. v. Cont'l Dev. Corp.*
    16 Cal. 4th 694 (1997) ............................................................................................. 11

*Los Molinos Mut. Water Co.*
    695 F. Supp. 3d 1174 (2023).................................................................................... 10

*Metro. Life Ins. Co. v. Massachusetts*
    471 U.S. 724 (1985).................................................................................................... 8

*Milavetz, Gallop & Milavetz, P.A. v. United States*
    559 U.S. 229 (2010) ............................................................................................... 7, 9

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*
    585 U.S. 755 (2018)................................................................................................. 8, 9

*Nationwide Biweekly Admin., Inc. v. Owen*
    873 F.3d 716 (9th Cir. 2017).................................................................................. 8, 9

*Papasan v. Allain*
    478 U.S. 265 (1986)............................................................................................... 4, 10

*Pharm. Rsch. & Manufacturers of Am. v. Stolfi*
    153 F.4th 795 (9th Cir. 2025).................................................................................... 5

*Pizzuto v. Tewalt*
    136 F.4th 855 (9th Cir. 2025).................................................................................... 2

*Pizzuto v. Tewalt*
    997 F.3d 893 (9th Cir. 2021)..................................................................................... 2

*Riganian v. LiveRamp Holdings, Inc.*
    791 F. Supp. 3d 1075 (N.D. Cal. 2025) ................................................................. 15

*Ruckelshaus v. Monsanto Co.*
    467 U.S. 986 (1984)................................................................................................. 11

*Sato v. Orange Cnty. Dep't of Educ.*
    861 F.3d 923 (9th Cir. 2017)..................................................................................... 4

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Schall v. Martin*
    467 U.S. 253 (1984) ..................................................................................................... 15

*Seniors C.L. Ass'n, Inc. v. Kemp*
    965 F.2d 1030 (11th Cir. 1992) .................................................................................... 12

*Sessions v. Dimaya*
    584 U.S. 148 (2018) ..................................................................................................... 15

*Seven Up Pete Venture v. Schweitzer*
    523 F.3d 948 (9th Cir. 2008) ........................................................................................ 10

*Small Bus. Fin. Ass'n v. Mohseni*
    No. 24-50, 2025 WL 1111493 (9th Cir. Apr. 15, 2025) ............................................ 7, 8

*Smith v. Goguen*
    415 U.S. 566 (1974) ..................................................................................................... 12

*Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*
    840 F.2d 653 (9th Cir. 1988) ..................................................................................... 6, 11

*Syngenta Crop Prot., Inc. v. Helliker*
    138 Cal. App. 4th 1135 (2006) ..................................................................................... 11

*The Wireless Ass'n v. City of Berkeley, California*
    928 F.3d 832 (9th Cir. 2019) ....................................................................................... 5, 7

*Thompson v. W. States Med. Ctr.*
    535 U.S. 357 ................................................................................................................... 8

*Uber Techs., Inc. v. City of Seattle*
    _ F.4th _ (9th Cir. Mar. 4, 2026) ............................................................................. 13, 14

*United States v. Generix Drug Corp.*
    460 U.S. 453 (1983) ....................................................................................................... 2

*United States v. Ritchie*
    342 F.3d 903 (9th Cir. 2003) .......................................................................................... 4

*United States v. Williams*
    553 U.S. 285 (2008) ..................................................................................................... 15

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
    455 U.S. 489 (1982) ................................................................................................ 12, 13

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Yamada v. Snipes*
786 F.3d 1182 (9th Cir. 2015)...................................................................... 14

*Ex parte Young*
209 U.S. 123 (1908) ..................................................................................... 10

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*
471 U.S. 626 (1985) ............................................................................... *passim*

**STATUTES**

United States Code, Title 21
§ 353a(b)(1)(A)(ii) .................................................................................. 2, 7

California Business & Professions Code
§ 4033................................................................................................................. 3
§ 4033(a) .................................................................................................. 13, 14

California Code of Regulations, Title 16
§ 1735.1(e)(1)(A) ..................................................................................... 13
§ 1735.7 (c)(1)............................................................................................... 5
§ 1736.1(e)(1)(A) ..................................................................................... 13
§ 1736.9(d) ......................................................................................... *passim*
§ 1736.11(c)(2)....................................................................................... 3, 5
§ 1738.9(b)(2) ................................................................................................ 5
§ 1738.11(b) ...................................................................................... 2, 6, 7, 13

**CONSTITUTIONAL PROVISIONS**

First Amendment................................................................................. *passim*

Fifth Amendment ................................................................................ *passim*

Eleventh Amendment.................................................................................. 10

Fourteenth Amendment....................................................................... 1, 4, 12, 15

**COURT RULES**

Federal Rule of Civil Procedure
Rule 12(b)(1)................................................................................................... 4
Rule 12(b)(6)................................................................................................... 4

Memorandum in Support of Motion to Dismiss (2:25-cv-02799-JAM-CSK)

**TABLE OF AUTHORITIES**
(continued)

**Page**

**OTHER AUTHORITIES**

California Code of Regulations, Title 16
§ 1735.5(b) ................................................................................................................. 13
§ 1735.6 ...................................................................................................................... 13
§ 1736.3(d) .................................................................................................................. 13
§ 1738.10(a)(1) ........................................................................................................... 13
§ 1738.10(b)(1) ........................................................................................................... 13
§ 1735.7 (c)(1) ......................................................................................................... 2, 3
§ 1736.11(c)(2) ............................................................................................................. 2
§ 1738.9(b)(2) ............................................................................................................... 2

Code of Federal Regulations, Title 21
§ 210.3(b)(3) ................................................................................................................. 2

*Manufacturer*, Black's Law Dictionary (12th ed. 2024) ................................................. 13

vi

## INTRODUCTION

Compounding pharmacies make customized, compounded drugs and generally purchase their ingredients for these drugs from wholesale suppliers. These wholesale suppliers, in turn, purchase their ingredients from pharmaceutical manufacturers, which are sometimes called the original manufacturers. To limit patient risks from improper ingredients in compounded drugs, the California State Board of Pharmacy (the Board) recently enacted regulations providing that when a compounding pharmacy purchases an ingredient from a supplier, the supplier must disclose the manufacturer of this ingredient. These regulations, among other things, ensure that compounding pharmacies know the original manufacturer of their ingredients, can verify these manufacturers are registered with the U.S. Food and Drug Administration (FDA), and are better able to take steps to limit patient harm in the event their ingredients are recalled.

Professional Compounding Centers of America, Inc. (PCCA) challenges these regulations. After this Court dismissed its complaint, PCCA filed an amended complaint raising claims under the First, Fifth, and Fourteenth Amendments. This Court should dismiss each of these claims. PCCA's First Amendment claim is subject to review under a standard akin to rational basis review. Readily comporting with this standard, the regulations simply require PCCA to disclose a factual, noncontroversial detail—the original manufacturer of its ingredients. Nothing about this limited disclosure requirement conflicts with the First Amendment. PCCA's Fifth Amendment claim, based on the Takings Clause, is improperly pled and barred by sovereign immunity. And its Fourteenth Amendment claim, based on the void-for-vagueness doctrine, is also fatally flawed. PCCA lacks standing to bring a pre-enforcement vagueness challenge and, in any event, cannot show that the regulations are impermissibly vague. For these reasons and those described below, the Court should dismiss the complaint in its entirety without leave to amend.

## BACKGROUND

### I.    THE BOARD ADOPTS REGULATIONS REQUIRING TRANSPARENCY IN A COMPOUNDED DRUG'S SUPPLY CHAIN

Compounding pharmacies provide medications that are typically not commercially available and prepare them to meet patients' specific needs. ECF No. 42 (FAC) ¶ 48. These pharmacies

1

provide several important benefits, including serving individuals who are allergic to an ingredient in a mass-produced product. *Id.* But compounded drugs can pose risks distinct from commercially manufactured drugs. One potential risk concerns the quality of the ingredients used to make compounded drugs. While compounded drugs are required to contain ingredients from FDA-registered facilities, 21 U.S.C. § 353a(b)(1)(A)(ii), these drugs are not FDA-approved and so pose a greater risk of drug contamination, *see Pizzuto v. Tewalt*, 997 F.3d 893, 898 (9th Cir. 2021); *Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*, 655 F. Supp. 3d 270, 283 (D. Del. 2023), *aff'd,* No. 2023-1540, 2023 WL 5970784 (Fed. Cir. Sept. 14, 2023).

To enhance patient safety, the Board recently enacted regulations ensuring that compounding pharmacies "'have transparency into the supply chain and awareness of the manufacturer (where the manufacturer and vendor are different).'" FAC ¶ 39. These regulations cover compounding pharmacies and those supplying active pharmaceutical ingredients (API) and inactive "excipients" (such as capsules) to these pharmacies. *See United States v. Generix Drug Corp.*, 460 U.S. 453, 454 (1983) (discussing excipients). The regulations require these suppliers to disclose to a compounding pharmacy (1) the manufacturer of each API that the pharmacy purchases for compounded sterile preparations, Cal.Code Regs. tit. 16, § 1736.9(d), and (2) the manufacturer of each API and excipient that the pharmacy purchases for radiopharmaceutical preparations, *id.* § 1738.11(b). Suppliers must provide this information with an ingredient's certificate of analysis, Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b), which provides the results of chemical testing performed on the ingredient, *see Pizzuto v. Tewalt*, 136 F.4th 855, 862 (9th Cir. 2025). The regulations also require compounding pharmacies to maintain a compounding record that lists the manufacturer for "each component" of a compounded drug. Cal.Code Regs. tit. 16, §§ 1735.7 (c)(1), 1736.11(c)(2), 1738.9(b)(2); *see* 21 C.F.R. § 210.3(b)(3) ("*Component* means any ingredient intended for use in the manufacture of a drug product. . . .").

These regulations build on the Board's earlier regulations for compounded drugs. In a regulation enacted in 2016 (which governed until the Board adopted the challenged regulations here) the Board generally required compounding pharmacies to maintain a compounding record listing the manufacturer for "each component" of a compounded drug. Request for Judicial Notice

2

(RJN), Exh. 1 at 1.  This regulation largely mirrored the current requirements for compounding records.  *See* Cal.Code Regs. tit. 16, §§ 1735.7 (c)(1), 1736.11(c)(2).  But it included an exception, no longer present in the regulations, that allowed pharmacies to instead list the supplier if the manufacturer's name was "demonstrably unavailable."  RJN, Exh. 1.

The new regulations accord with FDA's approach.  FDA has issued warning letters to suppliers and encouraged them "to clearly identify the original API manufacturer as the API moves through the supply chain."  RJN, Exhs. 3-5.  Still today, FDA encourages suppliers to "ensure you have sufficient supply chain transparency to mitigate risks to patients" and to "clearly identify the original API manufacturer to customers who use them to make the finished drugs," noting potential threats to patients in omitting this information.  RJN, Exh. 2.[1]

## II.   PCCA'S CHALLENGE TO THE BOARD'S REGULATIONS

PCCA is a wholesale supplier, relabeler, and repackager of pharmaceutical ingredients.  FAC ¶¶ 10, 129.  It filed this suit against various Board members and officials in an as-applied challenge to the new regulations.  ECF No. 1.  Seeking equitable relief, it raised three claims.  In count one, it alleged the regulations violate its First Amendment rights by requiring it to disclose the original manufacturer of ingredients it sells.  It argued this disclosure compels speech that is false and controversial and bars it from calling itself a manufacturer, invoking a statute broadly defining manufacturer to include producers, repackagers, and others.  *Id.* ¶¶ 4, 95-99; *see* Cal. Bus. & Prof. Code, § 4033.  In count two, it alleged the regulations violate the Fifth Amendment by requiring it to disclose information—manufacturer identities—that is a trade secret.  ECF No. 1 ¶¶ 111-14.  And in count three, it raised a derivative declaratory relief claim.  *Id.* ¶ 128.

Granting Defendants' motion to dismiss, this Court dismissed PCCA's claims with leave to amend.  ECF No. 41 (Order); *see also* ECF No. 33.  Rejecting Plaintiff's First Amendment claim, the Court held that the regulations pass scrutiny under the standard described in *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), noting it "may prove difficult for Plaintiff to successfully plead a First Amendment claim based on the Court's

---

[1] FDA has defined "original manufacturer" to mean "the entity that originally produced the bulk drug substance and not a subsequent packer, repacker, labeler, or distributor."  RJN, Exh. 6 at 13.

3

reasoning." Order at 11-22. Rejecting Plaintiff's Fifth Amendment claim, the Court declined to "ignore the weight of authority precluding equitable relief for takings claims where monetary damages are available, as they appear to be here," adding that in any event, Plaintiff failed to allege or explain why available state law remedies are inadequate. *Id.* at 26. The Court also rejected Plaintiff's derivative claim for declaratory relief. *Id.* at 27.

PCCA afterward filed an amended complaint, again seeking equitable relief in an as-applied challenge to the regulations. In counts one and two, it once more alleges that the regulations violate the First and the Fifth Amendments. FAC ¶¶ 159-84. In count three, it alleges that the regulatory references to "manufacturer" are unconstitutionally vague in violation of the First and Fourteenth Amendments because the term "manufacturer" has a broad definition. *Id.* ¶¶ 195-206. And in count four, it raises a derivative declaratory relief claim. *Id.* ¶¶ 216-19.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction, including when a plaintiff's claims are barred by sovereign immunity and when a plaintiff lacks standing. *See Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017) (a sovereign immunity defense "may be raised in either a Rule 12(b)(1) or 12(b)(6) motion"). Under Rule 12(b)(6), a party may also move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must be dismissed under Rule 12(b)(6) "*either* if a cognizable legal theory is absent *or* if the facts alleged fail to suffice under a cognizable claim." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017) (emphasis in original).

In ruling on a motion to dismiss, a court may consider the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and matters subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts must accept the factual allegations contained in a complaint as true, but "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor are courts bound to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

**ARGUMENT**

**I.    PLAINTIFF HAS FAILED TO STATE A CLAIM IN COUNT ONE**

In count one, PCCA alleges that the regulations requiring it to disclose the original manufacturer of ingredients it sells violate its First Amendment rights.  FAC at ¶¶ 4, 168.  But this claim cannot survive a motion to dismiss, for the reasons explained in the Court's Order.

**A.    *Zauderer* Provides the Applicable Standard of Scrutiny**

The Supreme Court's decision in *Zauderer* supplies the applicable First Amendment standard of scrutiny for the regulations challenged here, as all parties agree.  *See* FAC ¶ 174.  These regulations provide that when a compounding pharmacy purchases an ingredient from a supplier, the supplier must disclose the ingredient's original manufacturer.  *See* Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b).  The regulations also require compounding pharmacies to maintain a compounding record listing each ingredient's original manufacturer.  *See* Cal.Code Regs. tit. 16, §§ 1735.7 (c)(1), 1736.11(c)(2), 1738.9(b)(2).  *Zauderer* describes the standard covering these types of compelled disclosures. *See CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 842 (9th Cir. 2019) (*CTIA*); *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 756 (9th Cir. 2019) ("*Zauderer* provides the appropriate framework to analyze a First Amendment claim involving compelled commercial speech").

"Under *Zauderer*, compelled disclosure of commercial speech complies with the First Amendment if the information in the disclosure is reasonably related to a substantial governmental interest and is purely factual and uncontroversial."  *CTIA*, 928 F.3d at 845; *see also Zauderer*, 471 U.S. at 651 (although "unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech," "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers").  The Ninth Circuit has described this standard as "akin to rational basis review." *Pharm. Rsch. & Manufacturers of Am. v. Stolfi*, 153 F.4th 795, 810-11 (9th Cir. 2025).

**B.    The Regulations Satisfy the *Zauderer* Standard**

As this Court already found, "the [r]egulations pass scrutiny under *Zauderer*."  Order at 11.

5

*First*, the regulations only require PCCA to disclosure factual, noncontroversial information—namely, the identity of the original manufacturer of the ingredients it sells. Attempting to show otherwise, PCCA alleges that the "[r]egulations violate the First Amendment in two distinct but related ways:  they restrict PCCA's truthful speech by prohibiting it from accurately identifying itself as 'the manufacturer,' and they simultaneously compel false speech by requiring PCCA to designate another entity as 'the manufacturer' when PCCA is, in fact and law, a manufacturer."  FAC ¶ 168.  Both allegations follow from a misreading of the regulations.

To start, nothing in the challenged regulations restricts truthful speech.  The relevant regulatory language—which provides that "[w]hen the [certificate of analysis] is received from a supplier, it must provide the name and address of the manufacturer," Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b)—does not purport to prohibit any speech at all.  The regulations instead "simply charge Plaintiff with revealing basic information—the original manufacturers of the pharmaceutical ingredients it sells."  Order at 15.  Nor does anything in the challenged regulations compel false speech.  As the Court explained in rejecting this very claim, "the original manufacturer of a pharmaceutical ingredient is the manufacturer of that ingredient.  That Plaintiff may also be deemed a 'manufacturer' under the law does not undo this fact."  Order at 12.

PCCA, moreover, does not dispute that it can still "note its own manufacturer status," FAC ¶ 34, for while the regulations require suppliers to disclose "the name and address of the manufacturer," they neither require them to do so using particular language nor preclude them from adding language, *see* Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b).  So if PCCA feels, however misguidedly, that it would be false or controversial to label the original manufacturer as the "manufacturer," it could label that manufacturer as the "original manufacturer."  And "if Plaintiff believes it is misleading to list only the original manufacturer on its [certificates of analysis], nothing in the [r]egulations restrict Plaintiff from explaining it is also a 'manufacturer' under the law because it tests, repackages, and resells the pharmaceutical ingredients."  Order at 12.  It thus has significant leeway under the regulations, leaving it fully able to avoid supplying information it believes could be false, misleading, or controversial.

*Second*, the required disclosure is justified and reasonably related to a substantial—and

6

indeed compelling—governmental interest. To satisfy this requirement, it is enough that the disclosure furthers "some substantial—that is, more than trivial—governmental interest." *CTIA*, 928 F. 3d at 844. Easily clearing this hurdle, the Board plainly has a substantial interest in ensuring that compounding pharmacies know the source of their ingredients to limit patient risk.

When a wholesaler, like PCCA, fails to disclose these manufacturers to compounding pharmacies, the pharmacies are left in the dark about the ingredients they are purchasing from wholesalers. They are consequently unaware that they may be using ingredients from improper manufacturers and unable to verify whether these manufacturers are FDA-registered. *See* 21 U.S.C. § 353a(b)(1)(A)(ii) (API manufacturers must be FDA-registered); Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b) ("API and excipient components used to compound a radiopharmaceutical shall be manufactured by an FDA-registered facility"). They are also less able to take appropriate steps when a recall occurs, for if they are unaware of these manufacturers' identities, they cannot effectively respond if the Board or FDA sends an alert that one or more of these manufacturers has had a recall. This potential for harm is "self-evident" even without an evidentiary record. *Zauderer*, 471 U.S. at 652; *see also* Order at 17-20; *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 251 (2010) (*Milavetz*) (government did not need to provide evidence showing disclosure requirement was necessary); *Small Bus. Fin. Ass'n v. Mohseni*, No. 24-50, 2025 WL 1111493, at *3 (9th Cir. Apr. 15, 2025) (State "is not required to produce evidence of effectiveness" to justify a disclosure requirement). The Board's challenged regulations are also reasonably related—and in fact directly targeted—to this substantial interest in requiring PCCA and similar entities to disclose the original manufacturers to compounding pharmacies purchasing their ingredients.[2]

PCCA's allegations do not show otherwise. It suggests that the regulations are unnecessary, stating that even FDA has not "determined that such disclosure on the [certificates of analysis] used by PCCA serves public health purposes." FAC ¶ 8. But the Board can enact regulations to enhance

---

[2] Apart from being reasonably related to this substantial interest, the Board's disclosure requirement also facilitates compliance with federal law. Federal law requires a compounding pharmacy to use bulk drug substances "that are manufactured by an establishment that is registered under section 510. . . ." 21 U.S.C. § 353a(b)(1)(A)(ii). But a compounding pharmacy cannot verify its compliance with this requirement unless it knows the identities of the establishments that manufactured its ingredients.

7

patient safety even in the absence of a prior FDA finding about patient risks. *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 362 (noting States' historical role in regulating compounded drugs); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756 (1985) ("States traditionally have had great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons" (internal quotation marks and citation omitted)); *Small Bus. Fin. Ass'n*, 2025 WL 1111493, at *3 (State "is not required to produce evidence of effectiveness"). And to the extent PCCA believes that FDA has not found disclosure serves public health purposes, it is wrong in any event. FDA specifically encourages suppliers to "ensure you have sufficient supply chain transparency to mitigate risks to patients" and to "clearly identify the original API manufacturer to customers who use them to make the finished drugs," noting the potential threats to patients in omitting this information. RJN, Exh. 2; *see also* RJN, Exhs. 3-5.[3]

*Finally*, the regulations are not unduly burdensome. "A disclosure is 'unduly burdensome' when the burden 'effectively rules out' the speech it accompanies." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 734 (9th Cir. 2017) (citation omitted); *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 778 (2018) (*NIFLA*) (finding unduly burdensome a disclosure requirement that "drowns out the facility's own message"). The regulations here do no such thing. They require only limited disclosures to PCCA's buyers (i.e., compounding pharmacies) and "do not rule out" PCCA's ability to speak about the products it sells, "effectively or otherwise." *See Nationwide Biweekly Admin., Inc.*, 873 F.3d at 734. And as discussed above, the regulations provide suppliers like PCCA with substantial flexibility to describe their own role, if any, in testing, relabeling, and repackaging ingredients sold to compounding pharmacies.

---

[3] PCCA also alleges the regulations "are not narrowly tailored," "are more extensive the necessary," and should have required an alternative approach of having entities disclose their manufacturers to the Board. FAC ¶¶ 172-73. But PCCA misunderstands the applicable standard. Order at 18. *Zauderer* "requires only a reasonable relationship between purpose and ends, rather than [the] narrow tailoring" that PCCA favors. *See Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 551, 561, n.10 (6th Cir. 2012) (majority opn. of Stranch, J.). *Zauderer* also does not require courts to strike a disclosure requirement "merely because other possible means by which the State might achieve its purposes can be hypothesized." 471 U.S. at 651 n.14. At any rate, PCCA's suggested alternative approach is impractical. The purpose of these regulations is not to ensure that the Board itself knows the original manufacturer of every pharmaceutical ingredient—which would place an impossible burden on the Board. The purpose instead is to ensure that compounding pharmacies know the manufacturers of their ingredients to promote accountability and allow pharmacies to take appropriate steps to protect patient safety.

PCCA makes no plausible allegation in its complaint to show the regulations are unduly burdensome. It alleges that the regulations improperly force it to disclose trade secrets to third parties. FAC ¶ 173. But courts applying the unduly-burdensome requirement have not focused on preventing potential indirect impacts to a litigant's property; they instead have focused on impacts to a litigant's speech based on the manner of the required disclosure, including the size and length of the disclosure, to ensure that a litigant's speech is not "drown[ed] out," *NIFLA*, 585 U.S. at 778, or "'rule[d] out,'" *Nationwide Biweekly Admin., Inc.*, 873 F.3d at 734. The D.C. Circuit explained this point in *Am. Hosp. Ass'n v. Azar*, 983 F.3d 528 (D.C. Cir. 2020). Invoking *Zauderer*'s requirement that the challenged rule not be unduly burdensome, a litigant there argued that a disclosure requirement would "impose excessive financial burdens." *Id.* at 541. But the court found the claim meritless, writing: "To prevail in a First Amendment challenge, however, the [litigant] must demonstrate a burden on *speech*, and it has pointed to no such burden." *Id.* (emphasis in original). PCCA's claim suffers from the same defect.

The Supreme Court's reasoning in *Milavetz*, 559 U.S. 229 further undermines PCCA's position. Litigants there—a law firm, two of its employees, and two of its clients—challenged a federal law requiring certain persons promising debt relief to identify themselves as debt relief agencies and to disclose that obtaining debt relief could require filing for bankruptcy. *Id.* at 232-34, 250. Rejecting this challenge, the Court found the law consistent with *Zauderer*, explaining that "the disclosures entail only an accurate statement identifying the advertiser's legal status and the character of the assistance provided, and they do not prevent debt relief agencies . . . from conveying any additional information." *Id.* at 250. The Court added that while the challenging law firm claimed the term "debt relief agency" was confusing and preferred "referring to itself as something other than a 'debt relief agency'—*e.g.,* an attorney or a law firm"—its position lacked "any constitutional basis." *Id.* at 251. The Court reasoned that the law firm failed to show the label was confusing and still retained some flexibility in characterizing itself. *Id.* at 251-52. So it is here.

## II. PLAINTIFF'S CLAIM IN COUNT TWO IS IMPROPERLY PLED AND BARRED BY SOVEREIGN IMMUNITY

In count two, Plaintiff alleges that the disclosure requirement effects a regulatory taking

9

under the Fifth Amendment in requiring it to disclose trade secrets. But under the Eleventh Amendment, states are immune from suits brought in federal court by its own citizens or citizens of other states. *Papasan*, 478 U.S. at 275. This immunity bars inverse condemnation claims brought under the Fifth Amendment's Taking Clause in federal court against state officials in their official capacities. *See Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) (*Seven Up*); *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023) (noting "the overwhelming weight of authority among the circuits"). It thus bars PCCA from pursuing an inverse condemnation claim against Defendants here.

PCCA, perhaps realizing this and seeking to invoke *Ex parte Young*, 209 U.S. 123 (1908), has sought to frame its takings claim as one seeking prospective injunctive and declaratory relief. Under *Ex parte Young*, litigants can sue state officials in federal court for prospective relief to remedy ongoing violations of federal law. *Id.* at 149. But *Ex parte Young* offers no help to PCCA here. That is because the equitable relief it seeks—"even if alleged to be 'prospective'—is not consistent with the remedies available in connection with [its] claim asserting Fifth Amendment violations." *Los Molinos Mut. Water Co. v. Ekdahl*, 695 F. Supp. 3d 1174, 1189 (E.D. Cal. 2023). As the Supreme Court has explained, "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable." *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 201 (2019). And "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking." *Id.* Those considerations foreclose PCCA's attempt to obtain declaratory and injunctive here for its takings claim. *See* Order at 23; *Los Molinos Mut. Water Co.*, 695 F. Supp. 3d at 1189 (finding a party "cannot seek injunctive or declaratory relief for the alleged violations of the takings clause").

PCCA's counterarguments are unavailing. Arguing that pursuing just compensation would not be complete, practical, or efficient, it first asserts that the loss of a trade secret is irreversible. FAC ¶¶ 83-85. But in general, takings are irreversible. And many takings, including of real property, may cause irreparable harm, making complete relief impossible. *Cf. Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988). But that does not

mean the government lacks power to condemn in these cases. And PCCA's suggestion that potential takings of trade secrets must be enjoined beforehand, not compensated afterward, cannot be squared with Supreme Court caselaw. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016-17, 1020 (1984) (remedy for taking of trade secret is just compensation, not injunctive relief).

Second, PCCA suggests that trade secrets might not be protected under California's takings clause. FAC ¶¶ 83, 87-88. Its worry is misplaced. "[A] trade secret is property protected by the Fifth Amendment Taking Clause," *Ruckelshaus*, 467 U.S. at 1004, and "the takings clause in the California Constitution is 'construed congruently with the federal clause,'" *Lockaway Storage v. Cnty. of Alameda*, 216 Cal. App. 4th 161, 183 (2013) (citation omitted); *see Syngenta Crop Prot., Inc. v. Helliker*, 138 Cal. App. 4th 1135, 1167 (2006) (California takings law protects "intangible trade secret property rights protected by state law").

Lastly, PCCA alleges that it would be burdensome to seek compensation for multiple trade secrets and that it might have to wait years for compensation. FAC ¶¶ 80, 89-101. But no constitutional principle provides that when you have multiple property interests at issue, rather than only one, equitable relief is available. Nor does any legal principle provide that because takings claims can take some time to resolve, equitable relief is available. Endorsing these claims, moreover, would directly conflict with Supreme Court precedent explaining that "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus*, 467 U.S. at 1016 (footnote omitted); *see also id.* ("The Fifth Amendment does not require that compensation precede the taking.").[4]

---

[4] PCCA also raises several questions about the scope of California's takings clause. It first wonders whether state law includes a cap. FAC ¶ 81. Defendants are aware of none. *See Los Angeles Cnty. Metro. Transportation Auth. v. Cont'l Dev. Corp.*, 16 Cal. 4th 694, 715 (1997) ("'[j]ust compensation requires a full indemnity'"). PCCA also wonders whether state law would cover its goodwill and market position outside California. FAC ¶ 82. But neither of those interests are even protected under the Fifth Amendment. *See Ideker Farms, Inc. v. United States*, 71 F.4th 964, 987 (Fed. Cir. 2023) (Fifth Amendment does not cover "loss of goodwill"); *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 154 F. Supp. 2d 1140, 1153 (W.D. Mich. 2001) (Fifth Amendment does not cover "loss of market share"), *aff'd in part, remanded in part sub nom. Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435 (6th Cir. 2004).

11

**III.   PLAINTIFF LACKS STANDING TO BRING, AND HAS FAILED TO STATE A CLAIM IN, COUNT THREE**

In count three, PCCA alleges that the regulatory references to "manufacturer" are overly vague in violation of the First and Fourteenth Amendments.  But PCCA lacks standing to bring this pre-enforcement vagueness challenge.  And even accepting PCCA's factual allegations as true, its claim still fails as a matter of law.

The void-for-vagueness doctrine "is rooted in the Due Process Clause," *Isaacson v. Mayes*, 84 F.4th 1089, 1099 (9th Cir. 2023), and relevant here, in the Fourteenth Amendment's Due Process Clause.  Founded on "a rough idea of fairness," *Colten v. Kentucky*, 407 U.S. 104, 110 (1972), the doctrine tolerates various degrees of vagueness "depend[ing] in part on the nature of the enactment," *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 498 (1982), with courts showing "greater tolerance of enactments with civil rather than criminal penalties," *id.* at 498-99.  Absent some reason for a greater degree of specificity, "[t]o find a civil statute void for vagueness, the statute must be 'so vague and indefinite as really to be no rule or standard at all.'" *Seniors C.L. Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992) (quoting *Boutilier v. Immigr. & Naturalization Serv.*, 387 U.S. 118, 123 (1967)).  Courts, however, "demand[] a greater degree of specificity" when a law may interfere with the right to free speech. *Smith v. Goguen*, 415 U.S. 566, 573 (1974).  In those cases, "courts ask whether language is sufficiently murky that 'speakers will be compelled to steer too far clear of any forbidden areas[.]'" *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019) (citation omitted).

Here, PCCA objects to regulatory references to "the manufacturer," claiming the term is too vague because it can be broadly defined to include the original manufacturer, wholesalers like PCCA, and others.  FAC ¶ 195.  But its challenge fails for two reasons.  First, PCCA lacks Article III standing to mount a pre-enforcement challenge.  A plaintiff has standing to bring a pre-enforcement challenge to an allegedly vague law where "the litigant is chilled from engaging in constitutionally protected activity." *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1350 (11th Cir. 2011).  But PCCA has not alleged that the regulations have caused it to change its behavior at all.  And having suffered no pre-enforcement injury, PCCA lacks standing.

Memorandum in Support of Motion to Dismiss (2:25-cv-02799-JAM-CSK)

Second, PCCA has not alleged a plausible claim. Because the challenged regulations impose no criminal penalties, they should be reviewed with "greater tolerance." *Village of Hoffman Estates*, 455 U.S. at 498. And while PCCA alleges that the regulations impinge on its First Amendment interests, FAC ¶ 202, its First Amendment claims are misguided for the reasons described above in Argument § I.B. *See Uber Techs., Inc. v. City of Seattle*, _ F.4th _, 2026 WL 603711, at *10 (9th Cir. Mar. 4, 2026) (declining to impose heightened vagueness standard based on First Amendment interests after rejecting First Amendment claim). In any event, even under the strictest vagueness review, the regulations are plainly not impermissibly vague.

To start, the regulatory text is sufficiently clear that suppliers must disclose the original manufacturer. To be sure, as PCCA notes, the term "manufacturer" can have a broad meaning in some contexts, with both an ingredient's original manufacturer and the ingredient's wholesale supplier potentially being labeled as the ingredient's manufacturers. *See* Cal. Bus. & Prof. Code, § 4033(a) (manufacturer includes, among others, the producer and repackager of an ingredient); FAC ¶ 195. But here, the regulations contemplate only a single manufacturer, referring to "*the* manufacturer." Cal.Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b) (emphasis added). And if only one entity can be deemed the "manufacturer," then it is most natural to construe the regulations to concern only the original manufacturer, i.e., the actual producer of the ingredient, consistent with the plain meaning of manufacturer. *See Manufacturer*, Black's Law Dictionary (12th ed. 2024) ("A person or entity engaged in producing or assembling new products.").

Context confirms this reading. The regulations elsewhere specifically distinguish a "manufacturer" from a "wholesaler," Cal.Code Regs. tit. 16, §§ 1735.1(e)(1)(A), 1736.1(e)(1)(A), showing the term manufacturer is narrow and omits wholesalers like PCCA. The regulations also elsewhere use "manufacturer" in a manner that plainly means the original manufacturer. For example, they generally require compounding pharmacies to "[f]ollow manufacturer preparation instructions." *Id.*, § 1738.10(a)(1), (b)(1); *see also id.*, §§ 1735.5(b), 1735.6, 1736.3(d). Under PCCA's theory, this would mean that compounding pharmacies could follow the instructions of anyone who could be defined as a manufacturer, not just the original manufacturer. And because even these pharmacies could be deemed manufacturers when preparing a drug—so long as they are

13

not compounding "on the immediate premises where the drug . . . is sold to the ultimate consumer," *see* Cal. Bus. & Prof. Code, § 4033(a)—then these pharmacies can just follow their own instructions. But that of course is not the appropriate reading of these regulations. These regulations instead, in referring to the "manufacturer," plainly mean the original manufacturer.

The Board's construction and regulatory purpose reinforce this reading. PCCA itself acknowledges that the Board construes the regulatory references to "the manufacturer" to mean the original manufacturer. FAC ¶ 186. The Board's interpretation matters, for courts "must consider 'any limiting construction that a[n] . . . enforcement agency has proffered.'" *Yamada v. Snipes*, 786 F.3d 1182, 1188 (9th Cir. 2015) (citation omitted). Because the challenged laws here are readily susceptible to the Board's construction—and indeed, are best read consistent with this construction—this Court may (and should) adopt this reading. *Id.*; *see id.* at 1190 (accepting interpretation that "is neither unreasonable nor the product of 'strained statutory construction'"). And considering the Board's expressed purpose to ensure that compounding pharmacies "'have transparency into the supply chain and awareness of the manufacturer (where the manufacturer and vendor are different),'" FAC ¶ 39, this further confirms that the term manufacturer means the original manufacturer. *See Uber Techs., Inc.*, 2026 WL 603711, at *10 (courts can consider a law's purpose—there, the "concern for discrimination"—in evaluating claimed vagueness).

Finally, reinforcing this construction further still, PCCA's complaint shows that PCCA has consistently understood "manufacturer" to mean the original manufacturer and understood "supplier" to include wholesale suppliers like itself. In objecting to the regulations pre-adoption, PCCA did not even identify itself as a manufacturer; it instead characterized itself as a "supplier" and treated "manufacturers" as distinct. ECF No. 42-4 at 2. And in its complaint, it even favorably cited language stating that the regulations would require "'a supplier to disclose an original manufacturer's identity.'" FAC ¶ 108; *see also id.* ¶¶ 109, 112. Elsewhere in its complaint, PCCA made the same point using various synonyms for original manufacturers, including "Upstream Sources" and "downstream manufacturers." *Id.* ¶¶ 4, 59, 109. And like the Board, it even used the term "manufacturer" to mean original manufacturer. *Id.* ¶¶ 115, 118-20.

14

Taking these considerations together—the regulations' plain text, the broader regulatory context, the Board's construction and regulatory purpose, and PCCA's own construction—PCCA cannot plausibly claim that the regulations are vague, let alone that they are unconstitutionally vague in leaving PCCA without fair notice of what disclosures it must make.  PCCA may object that the regulations could have been more precise.  But "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *United States v. Williams*, 553 U.S. 285, 304 (2008) (citation omitted).  Caselaw is replete with examples demonstrating this point and rejecting challenges to far more uncertain statutes.  *See, e.g.*, *Sessions v. Dimaya*, 584 U.S. 148, 159 (2018) ("Many perfectly constitutional statutes use imprecise terms like 'serious potential risk' . . . or 'substantial risk[.]'"); *Schall v. Martin*, 467 U.S. 253, 278-79 (1984) (rejecting argument that a provision was "fatally vague" because it authorized pretrial detention of juveniles deemed a "serious risk" of committing a crime before their next court appearance).  If all these laws are "perfectly constitutional," *Sessions*, 584 U.S. at 159, then surely the laws here are too.  *See Crownholm v. Moore*, 652 F. Supp. 3d 1155, 1166 (E.D. Cal. 2023) ("Whether a statute is unconstitutionally vague "'is a question of law" . . . that may be resolved on a motion to dismiss.'"), *aff'd,* No. 23-15138, 2024 WL 977676 (9th Cir. Mar. 7, 2024), and *aff'd,* No. 23-15138, 2024 WL 1635566 (9th Cir. Apr. 16, 2024).

**IV.    PLAINTIFF HAS FAILED TO STATE A CLAIM IN COUNT FOUR**

Finally, PCCA's standalone declaratory relief claim is also not a viable claim.  Declaratory relief "is a remedy and not a standalone cause of action." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025).  It is thus "more properly considered part of [PCCA's] prayer for relief" for the First, Fifth, and Fourteenth Amendment claims, and so should be dismissed along with PCCA's constitutional claims. *Id.*

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

/ / /

/ / /

/ / /

15

Dated:  March 25, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General


***/s/ David Green***
DAVID GREEN
Deputy Attorney General
*Attorneys for Defendants*

16