UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNE SODERGREN, Executive Officer of the California Board of Pharmacy, et al.,<br><br>Defendants. | No. 2:25-cv-02799-JAM-CSK<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART** |

Plaintiff Professional Compounding Centers of America, Inc., which tests, repackages, and supplies pharmaceutical ingredients to compounding pharmacies, challenges new regulations recently approved by the California State Board of Pharmacy (the "Board") which require it to disclose the original manufacturers of those ingredients, the identities of which Plaintiff currently keeps confidential. Plaintiff alleges that these regulations violate its First Amendment rights, as the regulations will compel Plaintiff to falsely state that the original manufacturers are the manufacturers of the ingredients even though Plaintiff qualifies as a manufacturer under both California and federal law. Plaintiff also alleges that the regulations violate its

Fifth Amendment rights, as the regulations require Plaintiff to reveal its valuable trade secrets, i.e., the identities of the original manufacturers. Finally, Plaintiff alleges that the regulations' references to "the manufacturer" are unconstitutionally vague in violation of the First and Fourteenth Amendments because the regulations refer to "the manufacturer" when they in fact mean the original manufacturer. Plaintiff seeks injunctive and declaratory relief based on these alleged constitutional violations.

Defendants, the officers and members of the Board, move to dismiss Plaintiff's claims. Defendants argue the regulations pass constitutional scrutiny under the applicable First Amendment standard because they compel a purely factual and noncontroversial disclosure, the identities of the original manufacturers, while also permitting Plaintiff leeway to describe their manufacturing role in testing and repackaging the ingredients. Defendants further argue that Plaintiff's Fifth Amendment claim fails because Plaintiff seeks only equitable relief, which is unavailable for Fifth Amendment takings claims when damages are available. Finally, Defendants argue that the regulations are sufficiently clear that "the manufacturer" means the original manufacturer, and that Plaintiff's claim for declaratory relief fails as it is premised on Plaintiff's First, Fifth, and Fourteenth Amendment claims.

As explained below, the Court grants Defendants' Motion to Dismiss in part. First, the Court finds that the disclosures compelled by the regulations pass constitutional muster as they are purely factual, noncontroversial, and not unjustified or

unduly burdensome; thus, Plaintiff has insufficiently pled a First Amendment claim. The Court also finds that Plaintiff has inadequately pled that the regulations are unconstitutionally vague under the Fourteenth Amendment, as the plain text of the regulations, read in concert with the Board and Plaintiff's interpretation of that text, demonstrate that "the manufacturer" refers to the original manufacturer. Finally, Plaintiff's claim for declaratory relief, which is premised on Plaintiff's First, Fifth, and Fourteenth Amendment claims, fails to the extent those underlying claims are dismissed.

The Court also denies Defendants' Motion to Dismiss in part. The Court finds that Plaintiff has sufficiently pled that damages are insufficient or unavailable for their Fifth Amendment takings claim such that equitable relief is permitted. Plaintiff's final claim for declaratory relief also survives to the extent it is based on Plaintiff's Fifth Amendment claim.

In sum, the Court dismisses Plaintiff's first and third causes of action, as well as Plaintiff's fourth cause of action in part, but declines to dismiss Plaintiff's second cause of action.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The factual background of this case is well known to the Parties and is also set forth in this Court's prior Order granting dismissal of Plaintiff's Complaint. Order at 3-7, ECF No. 41. The Court will address Plaintiff's amended allegations in more detail as required below.

Plaintiff brought this action on September 26, 2025, bringing claims for (1) injunctive and declaratory relief based

on unlawful restraint of speech in violation of the First Amendment, (2) injunctive and declaratory relief based on violation of the Fifth Amendment Takings Clause, and (3) declaratory relief based on the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. ECF No. 1. Defendants moved to dismiss Plaintiff's claims, and this Court dismissed Plaintiff's claims with leave to amend. ECF No. 33; Order at 9-27. The Court first dismissed Plaintiff's First Amendment claim, holding that the regulations at issue, Title 16, Division 17, Articles 4.5, 4.6, 4.7 and 4.8 of the California Code of Regulations (the "Regulations"), passed scrutiny under the standard described in Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626 (1985), as the disclosures required by the Regulations were purely factual, noncontroversial, reasonably related to a substantial governmental interest, and not unduly burdensome. Order at 11-22. The Court further dismissed Plaintiff's Fifth Amendment claim, finding the Court could not "ignore the weight of authority precluding equitable relief for takings claims where monetary damages are available, as they appear to be here," particularly where Plaintiff had failed to allege or explain why available state law remedies were inadequate. Id. at 22-26. Finally, the Court dismissed Plaintiff's claim for declaratory relief as that claim was premised on Plaintiff's underlying First and Fifth Amendment claims. Id. at 27.

Plaintiff filed their operative First Amended Complaint on February 23, 2026, bringing four causes of action for (1) injunctive and declaratory relief based on unlawful restraint

of speech in violation of the First Amendment, (2) injunctive and declaratory relief based on violation of the Fifth Amendment Takings Clause, (3) injunctive and declaratory relief based on violation of the First and Fourteenth Amendments – Vagueness, and (4) declaratory relief based on the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. First Am. Compl. ("FAC") ¶¶ 159-219, ECF No. 42. Defendants again moved to dismiss these claims on March 25, 2026. Mot., ECF No. 45-2. In support of that motion, Defendants request the Court take judicial notice of the former version of the Regulations and certain Food and Drug Administration ("FDA") documents. Req. Judicial Notice ("RJN"), ECF No. 45-1. Defendants' motion is fully briefed and was submitted without oral argument pursuant to Local Rule 230(g). Obj. RJN, ECF No. 46; Opp'n, ECF No. 47; Reply, ECF No. 50; ECF No. 51.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 12(b)(1), a party may move to dismiss a complaint for lack of subject-matter jurisdiction, including when a plaintiff's claims are barred by sovereign immunity and when a plaintiff lacks standing. See Sato v. Orange Cnty. Dep't of Educ., 861 F.3d 923, 927 n.2 (9th Cir. 2017) (a sovereign immunity defense "may be raised in either a Rule 12(b)(1) or 12(b)(6) motion"); Wright v. Incline Vill. Gen. Imp. Dist., 597 F. Supp. 2d 1191, 1199 (D. Nev. 2009) ("Lack of standing is a defect in subject-matter jurisdiction and may be properly challenged under Rule 12(b)(1).").

///

Under Rule 12(b)(6), a party may also challenge the sufficiency of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." Steinle v. City & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In the same vein, conclusory or formulaic recitations of elements do not alone suffice. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In granting a motion to dismiss, leave to amend should be freely given in the absence of undue delay, bad faith or dilatory motive, undue prejudice to the opposing party, or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). Dismissal

without leave to amend is proper only if the complaint cannot be saved by any amendment. Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007).

## III. OPINION

A. Request for Judicial Notice

As a threshold matter, Defendants ask the Court to take judicial notice of the former version of the Regulations codified at California Code of Regulations title 16, § 1735.3 between January 1, 2017 and October 1, 2025; an FDA alert titled "FDA to Compounders: Know Your Bulks and Excipients Suppliers"; several FDA warning letters; and an FDA policy titled "Interim Policy on Compounding Using Bulk Drug Substances Under Section 503A of the Federal Food, Drug, and Cosmetic Act Guidance for Industry." RJN at 1-2. Plaintiff objects to the Court taking judicial notice of all but the former version of the Regulations, arguing Defendants improperly attempt to introduce "extra-pleading materials to contradict well-pleaded allegations." Obj. RJN at 2.

The Court disagrees and takes judicial notice of these records. The Court may take judicial notice of any fact or record that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Relevant here, a court may take judicial notice of former regulations. See, e.g., Navajo Nation v. Dep't of the Interior, 876 F.3d 1144, 1153 n.3 (9th Cir. 2017). A court may also, more broadly, take judicial notice of official

government guidance documents and other government publications. See, e.g., Montera v. Premier Nutrition Corp., 111 F.4th 1018, 1030 n.2 (9th Cir. 2024); Crofts v. Issaquah Sch. Dist. No. 411, 22 F.4th 1048, 1051 n.1 (9th Cir. 2022); Smith v. L.A. Unified Sch. Dist., 830 F.3d 843, 851 n.10 (9th Cir. 2016) (noting that "courts routinely take judicial notice of letters published by the government"). However, while the Court takes judicial notice of the existence of these records, it does not take judicial notice of the truth of the contents therein. Del Puerto Water Dist. v. U.S. Bureau of Reclamation, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003) (taking judicial notice of "the existence and authenticity of the public and quasi public documents" but holding that "[t]o the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.").

B. Plaintiff's Claim for Unlawful Restraint of Speech Under the First Amendment Claim is Insufficiently Pled

The Court previously dismissed Plaintiff's First Amendment claim, finding it passed Zauderer scrutiny, under which the government may compel commercial speech so long as the compelled speech is purely factual, noncontroversial, reasonably related to a substantial government interest, and not unduly burdensome. Am. Beverage Ass'n v. City & Cnty. of San Francisco, 916 F.3d 749, 755-56 (9th Cir. 2019) (en banc). First, the Court found that "the Regulations require[ment] that Plaintiff disclose the original manufacturer of the [active pharmaceutical ingredients ("APIs")] it sells to compounding pharmacies in its [Certificates of Analysis ("COAs")]" was a purely factual disclosure because,

"[p]lainly stated, the original manufacturer of a pharmaceutical ingredient is the manufacturer of that ingredient," and "nothing in the Regulations restrict Plaintiff from explaining it is also a 'manufacturer' under the law[.]" Order at 12-13. The Court also found the disclosure requirement to be noncontroversial, reasoning the "Regulations simply charge Plaintiff with revealing basic information—the original manufacturers of the pharmaceutical ingredients it sells," which was neither subjectively nor objectively controversial under applicable law. Id. at 13-15. The Court further found that the Regulations were related to a substantial governmental interest, enhancing patient safety by increasing supply chain transparency for pharmaceutical ingredients. Id. at 15-20. Finally, the Court held that the Regulations were not unduly burdensome, as they merely required Plaintiff to disclose the original manufacturer of APIs sold and did not prevent Plaintiff from describing their own role in testing, relabeling, and repackaging ingredients sold to compounding pharmacies. Id. at 20-22.

Defendants again move to dismiss this claim, arguing nothing in Plaintiff's amended allegations affect the Court's analysis above. Mot. at 5-9; Reply at 1. The Court agrees. As this Court already observed in granting Plaintiff leave to amend, "it may prove difficult for Plaintiff to successfully plead a First Amendment claim based on the Court's reasoning above[.]" Order at 22. Having reviewed Plaintiff's First Amended Complaint, the Court finds this to be the case.

In Count One, Plaintiff now alleges "[t]he Regulations violate the First Amendment in two distinct but related ways:

they restrict [Plaintiff]'s truthful speech by prohibiting it from accurately identifying itself as 'the manufacturer,' and they simultaneously compel false speech by requiring [Plaintiff] to designate another entity as 'the manufacturer' when [Plaintiff] is, in fact and law, a manufacturer." FAC ¶ 168. "The Regulations' use of the definite article 'the' before 'manufacturer' compounds the constitutional violation by compelling [Plaintiff] to designate a single entity as 'the manufacturer' when multiple supply chain participants—including [Plaintiff] itself—qualify as manufacturers under California law." Id. ¶ 169. As Plaintiff alleges, "[t]his compelled designation is not a disclosure of 'purely factual and uncontroversial information,' but instead requires [Plaintiff] to adopt and communicate a disputable legal and factual characterization—specifically, that one particular Upstream Source, rather than [Plaintiff] or any other qualifying entity, bears sole manufacturer status." Id.

The Court disagrees. Nothing in the Regulations restricts truthful speech or compels false speech. The Regulations "simply charge Plaintiff with revealing basic information—the original manufacturers of the pharmaceutical ingredients it sells." Order at 15. Plaintiff does not dispute that it can still "note its own manufacturer status," FAC ¶ 34, and while the regulations require suppliers to disclose "the name and address of the manufacturer," they neither require them to do so using particular language nor preclude them from adding language, see Cal. Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b). "The sole restriction placed on Plaintiff is that they may not omit the

identity of the original manufacturer" in preparing their COAs. Order at 13. For the reasons stated in the Court's prior Order, "[t]his disclosure requirement is purely factual." Id.

Plaintiff further argues that the Regulations compel speech on a reasonably disputed topic because "the word 'manufacturer' has multiple possible meanings." Opp'n at 14. Plaintiff argues this is controversial under National Association of Wheat Growers v. Bonta ("NAWG"), 85 F.4th 1263, 1277-78 (9th Cir. 2023) because "reputable legal authorities—including California law, federal law, and the laws of Texas and other states—conflict with the Board's position that [Plaintiff] is not a 'manufacturer.'" Id. at 14. However, the Court has already considered NAWG as well as other authorities cited by Plaintiff and has found no controversy here. Order at 14.

Finally, Plaintiff contends the Regulations are unjustified and unduly burdensome, as they threaten to "destroy[] the confidentiality of its Upstream Sources, which undermines [Plaintiff]'s ability to conduct its business," and the Board could achieve its stated purpose, enhancing patient safety, through far less burdensome means. Opp'n at 14-15. However, as the Court has already explained, "'[t]o prevail in a First Amendment challenge, . . . the [plaintiff] must demonstrate a burden on [its] speech[,]' not finances," which Plaintiff still fails to do here. Order at 21. "A disclosure is 'unduly burdensome' [only when] when the burden 'effectively rules out' the speech it accompanies." Nationwide Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 734 (9th Cir. 2017) (citation omitted). The Regulations here do no such thing. They require only limited

disclosures to [Plaintiff]'s buyers (i.e., compounding pharmacies) and "do not rule out" Plaintiff's ability to speak about the products it sells, "effectively or otherwise." See id. at 734.

For these reasons, the Court dismisses Plaintiff's first cause of action under the First Amendment. As the Court previously dismissed this claim, the Court finds that further amendment is futile and dismisses the claim with prejudice.

C. Plaintiff's Takings Claim Under the Fifth Amendment is Sufficiently Pled

The Court previously dismissed Plaintiff's Fifth Amendment takings claim, finding that claim was barred by sovereign immunity under the Eleventh Amendment because it sought only injunctive and declaratory relief, and equitable relief is generally unavailable for such claims where just compensation is an available and adequate remedy. Order at 22-24. The Court found that, contrary to Plaintiff's allegations that "there [were] no state law means to obtain compensation for [Plaintiff]'s loss," Compl. ¶ 115, ECF No. 1, "California law apparently allows parties to seek just compensation for takings of property, including trade secrets." Order at 24-26. Accordingly, the Court dismissed the claim because "Plaintiff ha[d] insufficiently alleged it w[ould] be prevented from bringing suit to recover just compensation for any alleged future takings, or that such remedies [were] inadequate[.]" Id. at 26.

Defendants argue the Court should again dismiss this claim on sovereign immunity grounds, as Plaintiff still fails to adequately plead state law remedies are inadequate. Mot. at 11.

The Court disagrees. Plaintiff now alleges in far greater detail why state law remedies are inadequate, acknowledging that while "California common law allows claims for inverse condemnation of intangible property in some circumstances," Plaintiff "is aware of only one case that has suggested in dicta that trade secrets are the type of intangible property that might be compensable by inverse condemnation proceedings." FAC ¶ 80. Further, Plaintiff "is not aware of any California decision actually awarding damages in an inverse condemnation proceeding in which a regulatory taking of trade secrets occurred through compelled ongoing disclosure of trade secret information." Id. Plaintiff continues, alleging that "[e]ven if an inverse condemnation remedy were conceptually available under California law, it would not be complete, practical, or efficient" remedy because (1) the harm caused by the Regulations is irreversible; (2) the Board relies on an unprecedented and untested theory of California law; (3) the Board's theory requires burdensome and repetitive litigation; (4) the Regulations will inflict takings perpetually in the future; and (5) Plaintiff would be forced to disclose trade secrets and suffer the harm from that disclosure but wait for potentially years of litigation before recovering damages. Id. ¶¶ 83-101.

The Court finds these allegations sufficient at this stage to establish that just compensation remedies are not sufficiently available such that Plaintiff may seek equitable remedies instead. As this Court previously found, "the weight of authority preclude[es] equitable relief for takings claims where monetary damages are available[.]" Order at 26. That said,

Plaintiff plausibly alleges that such damages are not clearly available here given that "Defendants cannot identify a single case that actually awarded damages for the regulatory taking of a trade secret—nor has [Plaintiff] been able to locate such authority." Opp'n at 4-5. While a hypothetical state cause of action exists because California takings law protects "intangible trade secret property rights protected by state law," Syngenta Crop Prot., Inc. v. Helliker, 138 Cal. App. 4th 1135, 1167 (2006), whether such a cause of action is actually available is uncertain, as Plaintiff's claim would present a novel and untested theory of California law. This uncertainty weighs in favor of allowing Plaintiff's claim to proceed.

Plaintiff also argues that, even if a damages remedy were available, that remedy would be inadequate because Plaintiff would be forced to bring hundreds of repetitive lawsuits to seek compensation for each of its future trade secrets takings, citing Pharmaceutical Research and Manufacturers of America v. Stolfi, 724 F. Supp. 3d 1174 (D. Or. 2024), in support. Opp'n at 6-8. The Court finds this argument less persuasive. The Court takes Plaintiff's point that "forcing [it] to seek compensation for each of its future trade secrets takings in California state court" would be burdensome. See Opp'n at 6. However, recent Supreme Court cases have made clear that "injunctive relief will be foreclosed" when "just compensation remedies are available," Knick v. Twp. of Scott, 588 U.S. 180, 205 (2019), including in trade secret cases, Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-17, 1020 (1984) (remedy for taking of trade secret is just compensation, not injunctive relief). Apart from the district

court's decision in Stolfi, Plaintiff has not cited any clear authority that the possibility a plaintiff may need to pursue numerous, repetitive claims over the course of many years alone entitles them to equitable relief.

That said, given that damages are not clearly available in state court for Plaintiff's takings claim, the Court declines to dismiss Plaintiff's second cause of action under the Fifth Amendment at this stage.

D. Plaintiff's Claim for Unconstitutional Vagueness Under the First and Fourteenth Amendments is Insufficiently Pled

In Plaintiff's newly-added third cause of action, Plaintiff pleads that the Regulations' references to "manufacturer" are overly vague in violation of the First and Fourteenth Amendments. FAC ¶¶ 185-207. Plaintiff's claim rests on the fact that the Defendants interpret "the manufacturer" to require that Plaintiff disclose the original manufacturer, despite there being no reference to "the original manufacturer" in the Regulations. Id. ¶¶ 131-137, 187, 205. As Plaintiff alleges, "[a] person of ordinary intelligence could not read the Regulations and understand that they require the identification of only an 'original' manufacturer—as opposed to any entity meeting the statutory definition of 'manufacturer' under California Business & Professions Code § 4033," which renders the Regulations "standardless" under the Fourteenth Amendment. Id. ¶¶ 198-200.

Defendants move to dismiss this claim on two grounds. First, Defendants argue that Plaintiff lacks standing to challenge the Regulations for vagueness because a plaintiff

bringing a pre-enforcement challenge must allege they are chilled from engaging in constitutionally protected activity, which Plaintiff has failed to do. Mot. at 12. Second, Defendants argue that the Regulations' plain text, the broader regulatory context, the Board's construction, and Plaintiff's own construction of the statutory language all make sufficiently clear that "the manufacturer" means the original manufacturer. Id. at 13–15.

As a threshold matter, the Court finds that Plaintiff has standing to bring this claim. Defendants cite an Eleventh Circuit case, Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1350 (11th Cir. 2011), in support of their contention that Plaintiff must allege they are "chilled" from engaging in constitutional activity to seek pre-enforcement review. Mot. at 12. However, Plaintiff rightly points out that Ninth Circuit has expressly rejected the Bankshot "chilled" standard. See Isaacson v. Mayes, 84 F.4th 1089, 1098 (9th Cir. 2023). Moreover, Defendants have withdrawn the standing argument in their Reply. Reply at 5 n.3.

While Plaintiff has standing, the Court also finds that Plaintiff has insufficiently pled a void-for-vagueness claim. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); see also U.S. Const. amend. XIV (providing that no state "shall . . . deprive any person of life, liberty, or property, without due process of law"). The void-for-vagueness doctrine "addresses at least two connected but discrete due process concerns: first,

that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." Fed. Commc'n Comm'n v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012); see also Grayned, 408 U.S. at 108 (noting that vague laws violate the "basic principle of due process," including "fair warning" and "explicit standards for those who apply [the laws]").

As to fair notice, a court will, in many contexts, consider whether a statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited." Hill v. Colorado, 530 U.S. 703, 732 (2000). The Supreme Court and the Ninth Circuit have recognized that "[m]any statutes will have some inherent vagueness" and that a certain quantum of vagueness is permissible—and even necessary. See Rose v. Locke, 423 U.S. 48, 49-50 (1975); McSherry v. Block, 880 F.2d 1049, 1054 (9th Cir. 1989) (quoting Rose); see also Grayned, 408 U.S. at 110 ("Condemned to the use of words, we can never expect mathematical certainty from our language."). Here, however, Plaintiff argues that the Court should apply a heightened level of scrutiny as "the amended complaint alleges that the Regulations violate [Plaintiff]'s First Amendment rights." Opp'n at 12–13. Plaintiff is correct that "where [F]irst [A]mendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required." Kev, Inc. v. Kitsap Cty., 793 F.2d 1053, 1057 (9th Cir. 1986) (citing Grayned, 408 U.S. at 108-09). However, as held supra, Plaintiff fails to state a First Amendment claim. Thus, the Court declines to apply heightened scrutiny. See Uber

Techs., Inc. v. City of Seattle, 168 F.4th 1202, 1218 (9th Cir. 2026) (declining to impose heightened vagueness standard based on First Amendment interests after rejecting First Amendment claim).

Rather, the Court is guided by the Supreme Court's standard for civil statutes regulating economic activities, which are "subject to a less strict vagueness test because [their] subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc. ("Hoffman"), 455 U.S. 489, 498 (1982). "Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." Id. "Such laws are only void for vagueness if they create a standard 'so vague and indefinite as really to be no rule or standard at all.'" Fed. Trade Comm'n v. Kochava Inc., 671 F. Supp. 3d 1161, 1177 (D. Idaho 2023) (quoting Boutilier v. Immigr. & Naturalization Serv., 387 U.S. 118, 123 (1967)).

Here, Plaintiff argues that Defendants planned enforcement of a "non-existent 'original manufacturer' requirement" creates a "standardless enforcement scheme, one that would allow Defendants to enforce the Regulations based on a legal requirement that does not exist." Opp'n at 10. However, the Court agrees with Defendants that considering the "[R]egulations' plain text, the broader regulatory context, the Board's construction and regulatory purpose, and [Plaintiff]'s own construction," Plaintiff "cannot plausibly claim that the regulations are vague." Mot. at 15.

First, the Regulations refer to only a single manufacturer, "*the* manufacturer." Cal. Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b) (emphasis added). This could naturally be construed as the original manufacturer. Elsewhere, the Regulations specifically distinguish a "manufacturer" from a "wholesaler," id. §§ 1735.1(e)(1)(A), 1736.1(e)(1)(A), showing the term "manufacturer" is narrow and omits wholesalers such as Plaintiff. Second, the Board's construction reinforces reading "the manufacturer" as the original manufacturer, as Plaintiff itself acknowledges that the Board construes the regulatory references to "the manufacturer" to mean the original manufacturer. FAC ¶ 190. Finally, attachments to Plaintiff's amended complaint shows that Plaintiff has, until now, understood "manufacturer" to mean the original manufacturer and understood "supplier" to include wholesale suppliers like itself. See Cal. Code Regs. tit. 16, §§ 1736.9(d), 1738.11(b) ("When the COA is received from a supplier, it must provide the name and address of the manufacturer."). For example, in objecting to the Regulations pre-adoption, Plaintiff characterized itself as a "supplier" and treated "manufacturers" as distinct. FAC, Ex. D at 2, ECF No. 42-4. Like the Board, Plaintiff uses the term "manufacturer" to mean original manufacturer. Id.

Here, given the lenient vagueness test for civil statutes regulating economic activities, given that Plaintiff is a sophisticated business entity in the pharmaceutical industry, and given that the text of the Regulations as well as the Board and Plaintiff's own interpretations support a finding that "the manufacturer" means the original manufacturer, the Court finds

that Plaintiff has failed to plausibly plead the Regulations are void-for-vagueness. Accordingly, the Court dismisses Plaintiff's third cause of action under the First and Fourteenth Amendments. The Court also finds that further amendment would be futile and dismisses this claim with prejudice.

E. Plaintiff's Claim for Declaratory Relief is Sufficiently Pled in Part

Finally, Plaintiff seeks declaratory relief under the Declaratory Judgment Act on her First, Fifth, and Fourteenth Amendment claims. FAC ¶¶ 208-19. The Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act does not provide an independent theory for recovery; if the underlying claims are dismissed, . . . then there is no basis for any declaratory relief." Muhammad v. Conner, No. 10-CV-1449 YGR, 2012 WL 2428937, at *3 (N.D. Cal. Jun. 26, 2012) (citing Hoeck v. City of Portland, 57 F.3d 781, 787 (9th Cir. 1995)); see also Team Enters., LLC v. W. Inv. Real Est. Tr., 721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) (explaining the Declaratory Judgment Act is merely a procedural statute and does not provide an independent theory for recovery).

Because the Court declines to dismiss Plaintiff's Fifth Amendment claim, the Court also declines to dismiss Plaintiff's claim for declaratory relief to the extent it is based on the Fifth Amendment claim. To the extent it is based on Plaintiff's

First or Fourteenth Amendment claims, Plaintiff's claim for declaratory relief is dismissed with prejudice.

**IV. ORDER**

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 45) in part. The Court DISMISSES Plaintiff's first cause of action under the First Amendment and Plaintiff's third cause of action under the First and Fourteenth Amendments without leave to amend. The Court also DISMISSES Plaintiff's fourth cause of action for declaratory relief to the extent it is premised on Plaintiff's First and Fourteenth Amendment claims without leave to amend. Defendants shall file their Answer to Plaintiff's Amended Complaint within twenty (20) days of this Order.

IT IS SO ORDERED.

Dated: July 28, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE